## G. H. HULME *et al.* v. C. F. DIFFENBACHER.

1. CASE-MADE — *Extension of Time.* The successor in office of the judge before whom an action was tried has the power, either at chambers or sitting in court, to grant an extension of time for making a case for this court in such action.

2. PLEADING, *Striking Out — Review.* The action of the district court on a motion to strike out a part of a pleading may be reviewed in this court, where proceedings to reverse the final judgment are commenced in due time, notwithstanding the fact that more than one year elapsed after the ruling complained of before the filing of a petition in error, as such action is not separately reviewable, but can only be considered as an intermediate order involving the merits of the action or a portion thereof.

3. SURETIES, *Contribution Between — Action — Parties.* Where a stock of merchandise is delivered by the plaintiff in certain replevin actions to three persons, who are his sureties on undertakings given by him in the actions to secure them against loss, and afterward two of them are released from liability on such undertakings, the other surety cannot maintain an action against them in his own name, to which the principal is not a party, for the purpose of obtaining an accounting of the matters connected with the trust, and to compel delivery to him of the balance of the trust property and moneys in the hands of his cosureties. The principal is an indispensable party to the determination of any disputed matter relating to the trust property.

4. ANSWER — *Averments, Error to Strike out.* In such an action, it is error for the court to strike from the answer averments as to the disposition that had been made by the plaintiff of a large portion of the trust property.

5. QUESTIONS, *Refusal to Submit.* It is also error for the court to refuse to submit to the jury material questions asked by the defendant pertinent to the issues in the case.

*Error from Barton District Court.*

ACTION on a contract by *Diffenbacher* against *Hulme* and another. Judgment for plaintiff. Defendants bring the case here. The opinion herein, filed March 10, 1894, states the material facts.

*G. W. Nimocks,* and *Valentine, Harkness & Godard,* for plaintiffs in error.

*Samuel Maher*, and *Wm. Osmond*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: Counsel for defendant in error challenge the sufficiency of the petition in error filed in this court, and contend that it does not allege that any judgment was rendered in the court below, fails to state who the parties were, and does not make the case-made a part of the petition in error. We find the petition in error somewhat informal. The statute requires simply that it shall set forth the errors complained of, and also requires that the plaintiff in error shall file with it a transcript of the proceedings containing the final judgment sought to be reversed, or the original case-made. There is no requirement that the case-made shall be made a part of the petition. The petition in error does refer to it as showing the errors complained of. The assignments of error are numerous, 26 in all, and are sufficient in our judgment to require consideration.

The point is also made that the case-made was not served within the time fixed by the judge who tried the case, and that the extension of time made by his successor in office is invalid. On the 27th day of November, 1889, the motion for a new trial was heard and overruled by the court, and the defendants were given 90 days to make and serve a case. After the term of office of the Hon. ANSEL R. CLARK, the judge before whom such case was tried, had expired, his successor in office, the Hon. J. H. BAILEY, made an order granting an extension of time of 30 days in which to make and serve the case. Section 549 of the code provides:

"The court or judge may, upon good cause shown, extend the time for making a case, and the time within which the case may be served. . . . And in all causes heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire, before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired."

It will be noticed that the first part of the section gives

authority to the court or judge to grant an extension of time. The last part gives authority to the judge who tried the case to sign and settle, notwithstanding the fact that his term of office may have expired. The reason for granting this power to the individual who has ceased to be an officer is perfectly apparent. He has knowledge of what occurred at the trial, while his successor in office may know nothing about it. The authority granted by the terms of the statute is limited to the one duty of settling and signing the case because of this necessity. Whether an order for extending the time for making and serving a case should be granted depends on circumstances arising after the trial, and having no necessary connection with it. As to these circumstances, and· as to the propriety of making such an order, the new judge has substantially as good opportunities for deciding understandingly as the old. In the absence of any strong reason for holding otherwise, we think the language used by the legislature should be given its usual and ordinary meaning, and that in terms it

1. Case-made— extension of time.

gives the court, or the judge of the court, power to grant the extension. That means the court in session, or the judge who is in fact in possession of the office. This disposes of the preliminary questions, and requires a consideration of the record before us.

The most material facts of the case are as follows: A stock of merchandise claimed by one W. B. Dunaway was attached by the sheriff and two constables under writs of attachment, the one to the sheriff from the district court, and the other two issued by a justice of the peace. Dunaway commenced three replevin actions to recover the property, and the parties plaintiff and defendant in this case signed the replevin bonds as his sureties. By virtue of these proceedings, possession of the property was obtained. Before signing said bond, the parties entered into a written agreement, which is as follows:

"Agreement made and entered into this 13th day of February, A. D. 1882, by and between W. B. Dunaway, party of the first part, and G. H. Hulme, R. C. Bailey, and C. F. Diffenbacher, parties of the second part, witnesseth: That

whereas, the party of the first part is the owner of the entire stock of dry goods, hats, caps, boots, shoes, notions, etc., formerly owned by John Lightbody; and whereas, said stock has been attached by divers persons, and said goods are now held by M. Gilmore, sheriff, J. T. Aerhart, constable, Parker Corbin, constable; and whereas, said party of the first part desires to bring replevin suit for said goods: Now, that in consideration that parties of second part furnish bond for such suits, and in such suits as may be required to hold said goods, now this agreement witnesseth, that in consideration of furnishing of such bonds as aforesaid, the said goods, wares and merchandise shall be placed in the hands of said parties of the second part, who shall have full control in connection with said party of the first part and in his name, and run said store in the building of said party of the first part until the close of the July term of court [district court], A. D. 1882.

"It is mutually agreed and understood, that no part of said stock of goods or the proceeds thereof shall be used by party of first part, but the proceeds shall be deposited with G. H. Hulme, same as if running account with bank, or at such place as the bondsmen shall agree upon. It is also agreed, that in case the bondsmen shall conclude and find that the interests of the party of the first part are injured by running the store, then it shall be closed up, and goods boxed up and held by bondsmen subject to order of the court on final hearing in the three cases named. It is agreed that G. H. Hulme and R. C. Bailey shall each receive the sum of $100 per month for their services in taking care of and selling said goods up to the close of the July term of the district court of Barton county, Kas., A. D. 1882. It is agreed that one extra clerk shall be hired in addition to the service of said G. H. Hulme and R. C. Bailey, at a salary of not exceeding $40 per month, which, in connection with all other expenses of running the store, shall be paid out of the profits on goods sold. The salary also of Hulme and Bailey shall be paid out of the profit of the sale of said goods, but said store shall not be run when the running expenses aforesaid cannot be paid out of the profits of sale of goods. All goods are to be kept insured by party of the first part. All profits on sales shall be turned over to party of the first part in excess of said running expenses. It is agreed that, in event of said suits being decided in favor of party of first part, then and in such case all of said goods shall be turned to said party of the first part, less the amount sold, which shall

be accounted for by said bondsmen, and all proceeds of sale shall be turned over to party of first part, together with such profits as may yet be in their hands after paying the running expenses. Bondsmen are to keep a daily sales and cash book, which shall contain articles sold and amount received therefrom and the cost of the articles so sold, and such other books as may be necessary for keeping account of said business. It is further agreed and understood, that when moneys are turned over to said G. H. Hulme, he shall receipt for same, and shall be personally liable to party of . . . part and other bondsmen for the money so received by him. In case it shall become necessary to accelerate the sale of said goods by new goods being purchased, then the goods required shall be purchased and paid for out of sale of said goods, profits thereon applied as hereinbefore specified in original stock. In testimony whereof, we have hereunto set our hands, this 13th day of February, 1882.

W. B. DUNAWAY,
*By Jacob Dunaway, party of the first part.*
C. F. DIFFENBACHER.
G. H. HULME.
R. C. BAILEY."

On February 24, a further written agreement was made, by which a basis of 10 per cent. less than the inventory price of the goods, and 30 per cent. off the price of trunks, was fixed for the computation of profits.

This action is brought by Diffenbacher against his cosureties. In his petition, he alleges the execution of the foregoing contract with Hulme and Bailey; that they sold under said contract a portion of the merchandise for over $1,500, and received payment in money therefor; that on December 18, 1884, Dunaway procured the release and discharge of Hulme and Bailey from all liability on said replevin bonds, and that Hulme and Bailey accepted said discharge; that on December 19, 1884, Dunaway and the plaintiff, acting together, demanded of Hulme and Bailey payment of all moneys in their hands by virtue of said written contract, and also that they turn over to Diffenbacher the remainder of merchandise still in their hands; that Diffenbacher has never been released from his liability; that Hulme and Bailey refused to pay over said

money, or to deliver said merchandise; that Dunaway is willing and and anxious to have the money held in trust by Hulme and Bailey paid over to the plaintiff for his indemnity; that if defendants Hulme and Bailey have any legal charges arising by virtue of said written contract with Dunaway against said trust fund, and not before this time adjudicated, the plaintiff and Dunaway are ready and willing to allow the same, and plaintiff asks that the defendants set up in their answer their charges, if any they have. The plaintiff thereupon prays that an accounting may be had, and for a judgment for the balance of moneys and goods in the defendants' hands. A general demurrer to this petition was interposed by the defendants. The overruling of this demurrer is alleged as error.

After the demurrer was overruled, the defendants answered, alleging a subsequent parol agreement, under which they claim to have run the store until the 1st of August, 1882, for $100 each per month, setting up various items of account, and alleging, among other things

"That there was a written contract in connection with the business in controversy in this case, but, as these defendants believe, not in words set forth in plaintiff's petition, the original contract being in the handwriting of G. W. Nimocks, and in the possession of C. F. Diffenbacher. . . . That the stock of goods, amounting to about $5,500, was taken possession of by C. F. Diffenbacher, and by him turned over to W. B. Dunaway and one Woolsey, and by them conveyed out of the jurisdiction of this court; that boots and shoes of said stock were, by consent of all parties, sold for $1,175, which were received by C. F. Diffenbacher. These defendants say that the books, invoices and papers in connection with said business are in the possession of said Dunaway or his attorneys by an unlawful taking possession of the same."

The plaintiff moved to strike these allegations from the answer. The court sustained the motion. The defendants thereupon filed an amended answer, omitting the parts stricken out, and set up various items which they claimed credit for in their accounts with Dunaway, and alleging that there was a balance due them over and above the moneys in their hands

of $700. Plaintiff replied, denying generally the averments of the answer, and alleging that the matters set up in the second count of defendants' answer were adjudicated in another suit. W. B. Dunaway was named in the petition as a party defendant, but no service was ever made on him, nor did he make any appearance in the case.

It is contended by the plaintiffs in error that the petition does not state a cause of action; that this is in effect a suit by one trustee to recover the trust property from his cotrustee; that the trust continues, notwithstanding the discharge from liability as sureties of the defendants. Various matters are suggested as essential to the plaintiff's cause of action. We do not think it necessary to discuss these matters in detail, the view we entertain of the case rendering such discussion unnecessary. W. B. Dunaway was named as a party in the petition. The goods originally were held by Diffenbacher, Hulme, and Bailey, under their contract with Dunaway. He was the beneficiary of the trust—the party primarily and mainly interested. When the goods were replevied from the officers, however, they became *in custodia legis*, and neither Dunaway nor his trustees or assignees could sell them, and pass a title which would be good in case Dunaway failed in the suits. (*Turner v. Reese*, 22 Kas. 319; *McKinney v. Purcell*, 28 id. 446; *National Bank v. Gerson*, 50 id. 582; *Sherburne v. Strawn*, 52 id. 39.) Other liabilities might therefore exist growing out of the disposition of the goods than those flowing from the execution of the replevin bonds.

The petition alleges the release and discharge of the defendants from all liability on said bonds, but not on account of their other acts in connection with the trust. We do not deem it necessary, however, to determine whether Dunaway and Diffenbacher have the right, under the facts of this case, to require delivery to Diffenbacher of the trust property after the release of the defendants as sureties on the bonds. The fatal difficulty in the way of the plaintiff in this action is, that Dunaway is not a party to it. We have not here the bare question of the right of the plaintiff, after he becomes solely liable

on the replevin bonds, to obtain possession from his cosureties of the property delivered to them to secure them against liability; but it is apparent on the face of the pleadings, from the petition, answer, and reply, that, before any judgment can be rendered, an accounting must be had between Hulme and Bailey on the one side, and Dunaway on the other, as to the trust property, and as to their claims for services and disbursements in the execution of the trust. Diffenbacher, a cosurety, demands of them an accounting, and tenders issues in this action as to the validity of their claims. The defendants deny that there is any balance in their hands belonging to Dunaway, and the question litigated in the trial court was, as to what, and how much, property belonging to Dunaway remained in the hands of the defendants, and as to what sums they should be allowed for their services, and what items of disbursements they had a right to keep out of the moneys received. It is perfectly plain and manifest that Diffenbacher is not the party in interest who has a right to litigate these questions with the defendants. He makes no claim of an assignment of Dunaway's rights to him. In the absence of Dunaway, the judgment rendered in this action has no binding force on him. It is to Dunaway that the defendants must ultimately account. There could be no complete and final determination of the questions arising under this trust in his absence. Had Diffenbacher succeeded in getting Dunaway into court, wholly different questions would be presented. It nowhere appears that Diffenbacher had actually sustained any loss or paid any money by reason of his obligation on the bonds. At most a liability had accrued against him in one of the cases, the others remaining still undetermined. It may be that, inasmuch as Dunaway was named as a party defendant, the petition was not demurrable. However this may be, the court erred in striking out the parts of defendants' answer above quoted.

4. Answer—averments, error to strike out.

The plaintiff himself alleges that all the property is insufficient to indemnify him. It was certainly material then to know what security he had, and what property he had

received. In an action for an accounting as to all matters growing out of the trust, it was not only proper, but necessary, in order to reach a full and complete adjustment of the rights of the parties, that all of the property which had at any time come into the hands of the trustees should be accounted for. It is said that if there were error in this ruling it cannot be considered, because more than a year elapsed after the order was made before the petition in error in this case was filed. The ruling on this motion was not

*2. Pleading, striking out— review.* subject to review in this court independently. It can only be considered after final judgment, and the limitation of time begins to run only after some action of the district court which is properly reviewable here. The

*3. Sureties, contribution between—action —parties.* fundamental mistake was in attempting to determine the rights of a party who was not before the court upon a mere claim of right to possession as security of the funds and property sought to be recovered.

Counsel for defendant in error contend that the case fails to present the questions urged on our consideration, and the greatest difficulty we experience in reaching a satisfactory disposition of the case arises from the condition of the record. The issues, as formed by the pleadings, clearly required the presence of Dunaway as a party at the trial; yet the defendants appear to have gone to trial without objection. Testimony offered by both parties is incorporated in the case, but it is not stated that it contains all the evidence. The instructions are voluminous and erroneous in many particulars, yet no exception was preserved to any of those given. Exceptions were taken to the refusal of the court to give two unimportant instructions asked by the defendants. In this refusal, however, we find no error. Special questions were submitted to the jury. The court struck out a number of those asked by the defendants. To this action of the court an exception is preserved, as also to the overruling of a motion on the part of the defendants for judgment on the findings, and also of a motion for a new trial. Notwithstanding the very imperfect

manner in which the many errors claimed are brought to our attention, there is ample here to compel a reversal of the case. The court, in its rulings on the testimony in numerous instances, was misled by the false theory on which the case was tried. All testimony offered by the defendants as to a subsequent parol agreement between themselves and Dunaway with reference to continuing the sale of the goods was excluded by the court, as was all testimony in reference to the value of their services, and the price agreed by Dunaway to be paid therefor in making such sale. The reason given by plaintiff's counsel for this ruling is, that it was not alleged in the answer that Diffenbacher was a party to that agreement, and that the original agreement could not be varied without his consent. This might be true if by change in the agreement Diffenbacher's security was diminished; but if he already had in his possession ample property to make him safe, as would appear to be the case from those averments in the answer which were stricken out by the court, he would have no ground for objecting to any payment Dunaway might be willing to make to Hulme and Bailey for their services. The fact that Dunaway was not in court litigating these matters in this action is thus made an excuse for summarily depriving Hulme and Bailey of their compensation without any hearing on the merits. Other similar errors were committed by the court in its rulings on the testimony. It was also error to admit a paper in evidence merely purporting to be a copy of the release of the defendants without accounting for the original. This release could only be effectual if assented to by the plaintiff, who testified that his consent to their release was conditional, and he denied that he gave a full consent. What the condition was nowhere appears. The plaintiff offered, in bar of the defendants' claims, the record in the case of C. F. Diffenbacher v. J. A. Snyder et al., tried in the Reno county district court. The record here is imperfect and fails to show the whole record in that case, but does contain, however, the petition and answer of Hulme and Bailey. So far as these pleadings go, they merely show a controversy as

to the rights of the respective parties to collect $985 from Snyder for a bill of goods sold to him.   They do not indicate a complete adjudication of the claims of the defendants. Both of the parties testified with reference to the proceedings in that case.   Defendants testified that their claims for compensation were not litigated in that action.   That testimony with reference thereto was ruled out by the court, yet in this case the jury were instructed that they could not consider such claims, and the court refused to submit to them special questions with reference to such compensation.   This was manifestly unfair and erroneous.   The errors with reference to the rulings of the court on the testimony and on the special questions submitted sufficiently appear in the case, and while we are not inclined to reverse a judgment because of a mere technical error with reference to the admission of evidence, when it is manifest, as in this case, that the substantial rights of the parties were disregarded, and that the case was conducted on a wholly erroneous theory, such errors are of substance, and not merely of form.

5. Questions, refusal to submit.

The judgment is reversed.

All the Justices concurring.