## CYRUS RASBERRY v. STATE.

No. A-115.   Opinion Filed September 9, 1909.

Rehearing Denied January 9, 1911.

(103 Pac. 865.)

1.   APPEAL—Judge Pro Tempore—Case-Made—Extension of Time —Record—Dismissal—Transcript.  (a) A judge pro tempore may fix the time within which a case-made may be prepared and served; but after he has fixed such time he cannot extend the time for preparing and serving such case-made.

(b)  If a judge pro tempore has tried a case, and has fixed the time within which a case-made may be prepared and served, and it is desired to secure an extension of time to prepare and serve such case-made, such extension of time may be granted by the regular judge of the district in which the case was tried, or it may be granted by any judge who may be presiding in said court; but, if granted by the judge presiding in said court, the record must show that court was actually in session at the time that the extension was granted by the court.

(c)  If the time fixed has expired within which a case-made may be prepared and served, no judge has power to extend such time.

(d)  If it appears in the record that a judge pro tempore has fixed the time within which a case-made may be prepared and served, and that subsequently the judge pro tempore

granted a further extension of time, nothing contained in the case-made filed after the expiration of the time first fixed will be considered on appeal.

(e) Our statute provides for two methods of prosecuting an appeal, viz: Upon the transcript of the record, accompanied by a case-made; or upon transcript of the record alone. If the first method is pursued, and for any reason the case-made is fatally defective, the appeal will not be dismissed, but will be considered upon the transcript of the record alone.

2. INDICTMENT AND INFORMATION—Robbery—Sufficiency of Allegations. (a) Every felonious act is necessarily a wrongful act. Therefore, in an information or indictment for robbery, when it is alleged that the act was feloniously done, this in substance and effect charges that it was wrongfully done, and it is not necessary to go further and allege that such act was wrongful.

(b) It is not necessary to allege in an information or indictment conclusions of law, or any fact of the existence of which the courts take judicial notice.

(c) In an indictment for robbery, when it is alleged that the property was taken from the person robbed, it is not necessary to allege that such property was in the possession of such person.

(d) Repetition of substantially the same allegation in an indictment or information is bad practice, and is condemned by our statute; but it does not necessarily follow that such repetition will constitute reversible error.

(e) For an indictment for conjoint robbery, which is held to be sufficient, see opinion.

3. ROBBERY—Verdict—Degree of Crime. (a) It is not necessary for a verdict of guilty of conjoint robbery to state the degree of which the defendant is convicted; for there are no degrees in this offense, and but one punishment is prescribed therefor by the statute.

4. APPEAL—Instructions—Harmless Error. (a) If an instruction given is inaccurate, and the evidence in the case is not before the court, such inaccuracy in the instruction, unless fundamental, will not constitute reversible error, if from any testimony which could have been introduced such error could not deprive the defendant of some substantial right.

(Syllabus by the Court.)

*Appeal from District Court, Lincoln County; R. H. Gaylen, Judge, pro tem.*

Cyrus Rasberry was convicted of burglary, and he appeals. Affirmed.

On the 11th day of February, 1908, the grand jury of Lincoln county returned into court an indictment for conjoint robbery against Cyrus Rasberry and others (hereinafter called defendants), which indictment is as follows:

"State of Oklahoma, County of Lincoln—ss.:

"State of Oklahoma, Plaintiff, v. Cyrus Rasberry, George Askins, and J. W. Lilly, Defendants.

"In the District Court of Lincoln County, Tenth Judicial District, Feb. Term, A. D. 1908.

"Indictment for Conjoint Robbery.

"The grand jurors of the state of Oklahoma, within and for the county of Lincoln, of the February term of the district court of the Tenth judicial district of the state of Oklahoma, in the year of our Lord one thousand nine hundred and eight, duly and legally chosen, selected, impaneled, sworn, and charged according to law, in the name and by the authority of the state of Oklahoma, upon their oaths present: That Cyrus Rasberry, George Askins, and J. W. Lilly, late of the county aforesaid, on the nineteenth day of January in the year of our Lord one thousand nine hundred and eight, in the county of Lincoln and state of Oklahoma aforesaid then and there being, did then and there wilfully, unlawfully, and feloniously make an assault upon the person of one Natcho Deneff, and did then and there wilfully, unlawfully, and, feloniously, wrongfully, forcibly, and conjointly, against the will and consent of him, the said Natcho Deneff, and by means of force and fear of immediate and unlawful injury to the person of him, the said Natcho Deneff, said fear being brought about in the mind of him, the said Natcho Deneff, by said defendant, with force and violence, by striking the said Natcho Deneff on the head with a revolver, a deadly weapon, and threatening to shoot him, the said Natcho Deneff, with said revolver, if he resisted, thereby and by means of such force did then and there produce in the mind of him, the said Natcho Deneff, fear of immediate and great injury to the person of him, the said Natcho Deneff, sufficient to overcome the resistance of him the said Natcho Deneff, and while he, the said Natcho Deneff, was under the influence of such fear, so produced as aforesaid, said defendants did feloniously take, steal, and carry away from the person of him, the said Natcho Deneff, the sum of one hundred dollars, lawful money of the United States, of the value of one hundred dollars, and one leather pocketbook, all the

property of the said Natcho Deneff, with the felonious intent, then and there, of the said Cyrus Rasberry, George Askins, and J. W. Lilly, to convert the said one hundred dollars, lawful money of the United States, and the said leather pocketbook, to their own use, and to deprive the owner, the said Natcho Deneff, permanently thereof. This contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Oklahoma.

"Dated at Chandler, Lincoln county, state of Oklahoma, this 11th day of February, A. D. 1908.        J. M. GARDNER,

"Foreman of the Grand Jury.

"JOHN J. DAVIS, County Attorney."

The defendant filed a motion to quash the indictment, which was by the court overruled, and the defendant reserved an exception.

The defendant was placed upon trial, and was found guilty by the jury of conjoint robbery. A motion for new trial was made and overruled, and judgment of the court was pronounced and entered of record. The defendant, expressing a desire to appeal, was granted 90 days in which to make and serve a case-made. On the 28th day of May, 1908, an extension of 60 days, in addition to the 90 days theretofore granted to make and serve a case-made, was granted to the defendant by the judge *pro tempore* who presided at the trial; but as to whether or not the said judge *pro tempore* was then presiding over a legal term of the district court of Lincoln county the record is silent. The case-made was served on the county attorney on the 21st day of August, 1908. The case-made was signed and settled by Judge W. N. Maben, the regular judge of that district, on the 19th day of December, 1908, and was also duly signed and settled by Special Judge *Pro Tempore* R. H. Gaylen on the 25th day of February, 1909, and was filed in this court on the 12th day of March, 1909. The case is brought before us on petition in error.

*Emery A. Foster,* for appellant.

*Charles West,* Atty. Gen., and *Charles L. Moore,* Asst. Atty. Gen., for the State.

No briefs reached the reporter.

FURMAN, PRESIDING JUDGE. (after stating the facts as above). First. On the 3d day of February, 1908, a motion for a new trial and a motion in arrest of judgment were overruled by the court, the defendant was duly sentenced, and upon application of the defendant 90 days was granted him in which to make and serve a case-made. Afterwards, on the 28th day of May, 1908, the said judge *pro tempore* granted an extension to the defendant of 60 days in which to make and serve a case-made, in addition to the 90 days previously granted. The Attorney General moves the court to dismiss the appeal upon the ground that the judge *pro tempore* was without power to grant this extension of time, and that the case-made was not served until after the expiration of the 90 days, originally granted, in which the case-made should be prepared and served.

The judge *pro tempore* did have power to make the original order granting 90 days in which to make and serve the case-made; but did he have power to grant the extension of time in which this might be done? The Attorney General contends that he did not have such power, and that the extension could only have been granted by the regular judge of the district. Section 4742, Wilson's Rev. & Ann. St. 1903, upon the subject of extending the time within which the case-made may be prepared and served, is as follows:

"The court or judge may, upon good cause shown, extend the time for making a case and the time in which the case may be served; and may also direct notice to be given of the time when a case may be presented for settlement after the same has been made and served, and amendments suggested, which when so made and presented shall be settled, certified, and signed by the judge who tried the cause, and the case so settled and made shall thereupon be filed with the papers in the cause; and in all cases heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign, or settle the case in all respects, as if his term had not expired; and if no amendments are suggested by the opposing

party, as above provided, said case shall be taken as true and containing a full record of the cause and certified accordingly."

What court? What judge? This power is confined to the court in which the case was tried, or to the judge of the district in which such court is held. No other court or judge has such power. From this we understand that, if the particular court in which the defendant was convicted was in session before the expiration of the time originally allowed, then whosoever might be presiding as judge at such session would have the power to make the order extending the time, or the regular judge of that district might make the order, whether his court was in session or not, provided the order is made before the expiration of the time granted in the original order. After the time allowed for making and serving a case-made has expired, no court or judge has the power to extend the time for so doing. *Abel v. Blair,* 3 Okla. 399, 41 Pac. 342; *Polson v. Purcell,* 4 Okla. 93, 46 Pac. 578; *Sigman v. Poole,* 5 Okla. 677, 49 Pac. 944; and *Commissioners v. Hubble,* 8 Okla. 209, 57 Pac. 163.

Our statute upon the subject of extending the time for preparing and serving a case-made was taken from the Kansas statute. Therefore it is important to find out how this statute was construed in that state. In *Hulme v. Diffenbacher,* 53 Kan. 182, 36 Pac. 60, the Supreme Court said:

"The point is also made that the case-made was not served within the time fixed by the judge who tried the case, and that the extension of time made by his successor in office is invalid. On the 27th day of November, 1889, the motion for a new trial was heard and overruled by the court, and the defendants were given 90 days to make and serve a case. After the term of office of Hon. Ansel B. Clark, the judge before whom such case was tried, had expired, his successor in office, Hon. J. H. Bailey, made an order granting an extension of time of 30 days in which to make and serve the case. Section 549 of the Code provides: 'The court or judge may, upon good cause shown, extend the time for making a case, and the time within which the case may be served. * * * And in all causes, heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may

hereafter expire, before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired.' It will be noticed that the first part of the section gives authority to the court or judge to grant an extension of time. The last part gives authority to the judge who tried the case to sign and settle, notwithstanding the fact that his term of office may have expired. The reason for granting this power to the individual who has ceased to be an officer is perfectly apparent. He has knowledge of what occurred at the trial, while his successor in office may know nothing about it. The authority granted by the terms of the statute is limited to this necessity. Whether an order for extending the time for making and serving a case should be granted depends on circumstances arising after the trial and having no necessary connection with it. As to these circumstances, and as to the propriety of making such an order, the new judge has substantially as good opportunities for deciding understandingly as the old. In the absence of any strong reason for holding otherwise, we think the language used by the Legislature should be given its usual and ordinary meaning, and that in terms it gives the court, or the judge of the court, power to grant the extension. That means the court in session, or the judge who is in fact in possession of the office. This disposes of the preliminary questions, and requires a consideration of the record before us."

In *Railway Co. v. Leeman,* 5 Kan. App. 804, 48 Pac. 932, that court said:

"On October 8, 1895, the jury in this case returned a verdict in favor of the defendant in error. Hon. A. J. Abbott was then the regular judge of the Twenty-seventh judicial district, which embraced Kearney county, and presided at the trial. In view of the fact that said county would, on October 15, 1895, become a part of the Thirty-second judicial district, according to the provision of chapter 106, laws of 1895, after which date the Twenty-seventh district would cease to exist, it was then agreed by counsel that the case should be continued for further proceedings until November 27th, that court should adjourn until said date, and that Judge Abbott should sit in the case to its conclusion as judge *pro tem.,* and do and perform all acts in said cause, including the settling and signing of the case-made, which he could do if the Twenty-seventh district should not have been abolished, 'and all and singular the things that the regular judge of the district

court could do and perform.' On November 27th the court convened pursuant to the adjournment which had been made according to the said agreement, and the case was concluded by Judge Abbott as judge *pro tem.* The time for making and serving a case-made by defendant was thereupon extended by the court until January 27, 1896. On the latter date Judge Abbott further extended the time for making and serving the case-made for 30 days from that date. Defendant in error has moved to dismiss these proceedings; the principal ground of his motion being that a judge *pro tem.* has no power to extend the time for making and serving a case-made, except while he is holding court. We think this motion must be sustained, in view of the construction of section 549 of the Code given by our Supreme Court in *Hulme v. Diffenbacher,* 53 Kan. 181, 36 Pac. 60. The power to extend the time for making and serving a case-made resides with the court when in session, whether presided over by the regular district judge or by a judge *pro tem.,* and with the district judge who is in fact in possession of the office. While holding court the powers of the judge pro tem. are as ample as those of the regular judge when sitting as a court; but when the court has finally adjourned the judge *pro tem.* is shorn of nearly all of his judicial powers. On January 27, 1896, Judge Abbott had no connection with the office of district judge. Another person held that office and was exercising its functions. The latter alone possessed the power, under the statute, to make the order which Judge Abbott then attempted to make. The case-made cannot therefore, be considered as such by us. We find, however, that it is certified as a transcript, and we shall not dismiss the proceedings, but will permit the plaintiff in error to treat the purported case-made as a transcript. *Dodge v. Hamburg-Breman Ins. Co.,* 4 Kan. App. 415, 46 Pac. 25. It is so ordered."

This construction was approved by the Supreme Court of Oklahoma Territory in *Whiteacre v. Nichols,* 17 Okla. 388, 87 Pac. 865. That court said:

"The record shows that the case was tried at May, 1905, term of the district court of the First judicial district in and for Lincoln county, before Hon. Bayard T. Hainer, presiding judge, and that the time to make and serve a case-made was by the court extended 90 days; that thereafter, on the 9th day of August, 1905, at his chambers, the time was further extended 50 days by Hon. John H. Burford, judge of that district. Objection is raised to

the consideration of this case by this court upon the ground that Hon. John H. Burford, the regular presiding judge of said district, not being the trial judge, did not have power to extend the time for making and serving case-made. Section 544, Wilson's Rev. & Ann. St. 1903, provides: 'The court or judge may upon good cause shown extend the time for making a case and the time in which the case may be served. * * * ' The above section gives the court, while in session, or the judge of the court, power to grant the extension. In this case Hon. Bayard T. Hainer was the trial judge, while Hon. John H. Burford was the judge of the court, the regular appointed and acting judge of the district court of that county, and in possession of the office, and as such he had power to grant the extension at chambers. *Hulme et al. v. Diffenbacher,* 53 Kan. 181, 36 Pac. 60; *Railroad Co. v. Leeman,* 5 Kan. App. 804, 48 Pac. 932; *Wallace v. Caldwell,* 9 Kan. App. 538, 59 Pac. 379."

This question came before the Supreme Court of this state in *City of Shawnee v. Farrell,* 22 Okla. 652, 98 Pac. 942. The opinion is by Justice Kane. He cites and approves the above authorities, as follows:

"The motion to strike the case-made from the files and dismiss the appeal in the above-entitled cause must be sustained. The cause was tried in the district court of Pottawatomie county before Hon. J. H. Wahl, acting as judge *pro tempore.* On the 4th day of January, 1908, judgment was rendered therein in favor of the defendant in error, plaintiff below, a motion for a new trial overruled, and the plaintiff in error, defendant below, was allowed 30 days in which to make and serve a case-made for the Supreme Court. Ten days were allowed to suggest amendments, case-made to be settled and signed upon 5 days' written notice by either party. On the 27th day of January, 1908, Hon. J. H. Wahl, the former judge *pro tempore,* made an order extending the period for making the case-made for 30 days from and after the time first allowed, and giving the plaintiff 30 days thereafter in which to suggest amendments thereto, the same to be signed and settled on 5 days' written notice by either party. The case-made was signed and settled by 'J. H. Wahl, Special Judge,' on the 28th day of February, 1908, which would be out of time unless the former judge *pro tempore* had authority to make the order granting the extension. The authorities seem to be uniformly to the effect that a judge *pro tempore* is without power to enter an

order extending the time to make and serve a case-made for the Supreme Court after he has ceased to sit as a court. *A., T. & S. F. Ry. Co. v. Leeman,* 5 Kan. App. 804, 48 Pac. 932; *A., T. & S. F. Ry. Co. v. McClure,* 5 Kan. App. 882, 48 Pac. 1117; *Hulme et al. v. Diffenbacher,* 53 Kan. 181, 56 Pac. 60; *Wallace v. Caldwell,* 9 Kan. App. 538, 59 Pac. 379.

"The first paragraph of the syllabus in the case of *A., T. & S. F. Ry. Co. v. Leeman, supra,* reads as follows: 'After he has ceased to sit as a court, a judge *pro tem.* has no power to extend the time for making and serving a case-made in an action tried before him. Such an extension can only be granted by the regular district judge, who is in fact in possession of the office.'

"In *Wallace v. Caldwell, supra,* Dennison, P. J., states the rule as follows: 'Slight diligence in examining the authorities would have shown that the judge in possession of the office, or the court, at the·time the extension was made, was the proper person or tribunal to extend the time, and that a judge *pro tem.,* after his term of office has expired, cannot extend the time for making and serving a case-made.'

"Section 4742, Wilson's Rev. & Ann. St. 1903, provides that 'the court or judge may, upon good cause shown, extend the time for making a case and the time in which the case may be served. * * * *' This court will take judicial notice of the fact that Hon. W. N. Maben was the regular judge of the district court in which the order extending the time was made. This being so, he, or the district court of Lincoln county, alone, were authorized by statute to make the order.

"The case of *Whiteacre v. Nichols,* 17 Okla. 387, 87 Pac. 865, is in point on the question. In that case the cause was tried before Hon. Bayard T. Hainer, while Hon. John H. Burford was judge of the court. Judge Burford made the order extending the time. Mr. Justice Garber, who wrote the opinion of the court, says: 'In this case Hon. Bayard T. Hainer was the trial judge, while Hon. John H. Burford was the judge of the court, the regular appointed and acting judge of the district court of that county, and in possession of the office, and as such he had power to grant the extension at chambers.'

"Upon the authority of the foregoing cases, the case-made must be held to have been signed and settled out of time; and, as there are no questions presented for review, except those which must be brought into the record by a case-made or bill of excep-

tions, the appeal is dismissed without prejudice. All the Justices concur."

This question again came before our Supreme Court in *Horner v. Goltry & Sons,* 23 Okla. 905, 101 Pac. 1111. Justice Dunn, in rendering the opinion of the court, said:

"Two questions are presented in the motion to dismiss the petition in error in this case. The first is: May a special judge, or a judge *pro tempore,* after he has ceased to sit in the case, extend the time for making and serving a case-made? The facts out of which this question arises are as follows: On May 12, 1908, the motion for new trial in the above-entitled cause was by Winfield Scott, the special judge who tried the same, overruled, and 60 days given to plaintiff in error within which to prepare and serve a case-made preparatory to appealing the case to this court. On July 10, 1908, on the application of plaintiffs in error, the said special judge granted an order extending the time for making and serving the case to August 12, 1908. The case-made was served August 11, 1908. Defendants in error filed their motion in this court, moving the dismissal of the cause, urging the contention that the special judge was without authority to grant such extension of time; that this power is vested alone in the regular court or judge, who may, upon good cause shown, extend the time for making a case, and fix the time within which the same shall be served. In our judgment defendant's motion is well taken, and should be sustained.

"Section 544, art. 22, c. 66 (section 4742) Wilson's Rev. & Ann. St. 1903, provides: 'The court or judge may, upon good cause shown, extend the time for making a case, and the time within which the case may be served. * * * And in all causes heretofore or hereafter tried, when the term of office of the trial judge shall have expired, or may hereafter expire, before the time fixed for making or settling and signing a case, it shall be his duty to certify, sign or settle the case in all respects as if his term had not expired.' The power of a judge *pro tempore* to act under the foregoing statute has already been determined by this court in the case of *City of Shawnee v. Farrell,* 22 Okla. 652, 98 Pac. 942, wherein we held: 'After he has ceased to sit as a court, a judge *pro tempore* has no power to extend the time for making and serving a case-made in an action tried before him. Such an extension can only be granted by the regular district judge, who is, in fact, in possession of the office.'"

The above authorities appear to us to be conclusive of the question that a judge *pro tem.*, it matters not how he was acting as such, has no power to grant an extension of the time within which a bill of exceptions may be prepared and served. After he has passed sentence on the defendant, and has fixed the time within which the case-made should be prepared and served, the power of the *pro tem.* judge to make any further orders in the case ceases, except to certify the case-made, if prepared and served within the time allowed in the original order, unless such judge *pro tem.* is still presiding over and has charge of the docket of the court. Under such conditions the judge *pro tem.* may lawfully make any order that the judge of the district court could make. If any further extension of time to prepare and serve a case-made had been desired, application should have been made to the regular judge of the district, or the judge presiding at a session of the district court of Lincoln county, for such extension, while such court was in session. If Judge Gaylen had been presiding at a legal term of the district court of Lincoln county at the time when he granted the extension of time, and had charge of the docket, this fact should have been made to appear in the record of this case. This court will take judicial notice of the fact that Hon. W. N. Maben was then the regular judge of the district court of Lincoln county, and this presumption must control our action, unless record evidence to the contrary is produced and legally presented to us. Therefore the order made by *Pro Tem.* Judge Gaylen, extending the time for preparing and serving the case-made, must be treated by this court as a nullity, and any pretended case-made prepared and served after the expiration of the 90 days originally granted cannot be considered by us.

But from this it does not necessarily follow that we should dismiss the appeal. Section 5606, Wilson's Rev. & Ann. St. 1903, is as follows:

"(5606) Sec. 470. An appeal to the Supreme Court may be taken by the defendant, as a matter of right, from any judgment against him; and, upon the appeal, any decision of the court,

or intermediate order made in the progress of the case, may be reviewed."

Section 5612, Wilson's Rev. & Ann. St. 1903, among other things, says:

"The plaintiff in error shall file with his petition in error a transcript of the proceedings containing the final judgment or order sought to be reversed, vacated, or modified, or the original case-made, as hereinafter provided, or a copy thereof. The plaintiff in error shall attach to and file with the petition in error the original case-made, filed in the court below, or a certified transcript of the record of said court, and in no such action hereafter instituted in the Supreme Court shall any charge, fees, or costs be taxed or allowed for making any copy of any paper filed in said action, except for one copy of said petition in error and case-made, or transcript, when such copy shall be ordered by the court for its use, and the same has not been furnished by the plaintiff in error thirty days before the first day of the term at which the case shall stand for hearing, and no costs or fees shall be taxed for making a complete record in such case, except when the same shall be made at the request of a party to the suit at his own costs. A party, desiring to have any judgment or order of the district or probate court or a judge thereof reversed by the Supreme Court, may make a case containing a statement of so much of the proceedings and evidence, or other matters in the action as may be necessary to present the errors complained of, to the Supreme Court."

So it is seen that an appeal may be taken to this court, either by a case-made accompanied by a certified transcript of the record, or on such certified transcript of the record alone, as the party appealing may elect. In this case the defendant attempted to appeal both upon a case-made and a certified transcript of the record. For the reasons hereinbefore given, this appeal must fail so far as the case-made is concerned. We are without power to consider anything that appears alone in the case-made. But we find that the record contains a properly certified transcript of the record. This we must consider, under the plain mandatory language of the statute. The motion to dismiss the appeal is

4 Cr.—40

therefore overruled, and the appeal will be treated as having been made upon the transcript of the record alone.

The first question which presents itself is as to what constitutes the record. Under the common law the record proper was the indictment, the plea of the defendant, the verdict of the jury, and the sentence of the court. But our statute has enlarged this rule. In this state the instructions of the court to the jury, as well as instructions requested by the defendant and refused by the court, and a copy of the clerk's minutes of the trial, are all incorporated in and become a part of the record. Wilson's Rev. & Ann. St. 1903, §§ 5484, 5580. See, also, *Jesse Reed v. U. S.*, 2 Okla. Cr. 652, 103 Pac. 371. We find the indictment, the plea of the defendant, the clerk's minutes of the trial, and the instructions given and refused, and the judgment incorporated in and properly certified to by the clerk in the transcript of the record before us. The petition for the writ of error complains of alleged errors appearing in the record, and we are therefore required to consider them on this appeal.

The question we are now considering was passed upon by the Supreme Court of Oklahoma Territory in *Lee v. United States*, 7 Okla. 558, 54 Pac. 792. The court there said:

"It is admitted by plaintiff in error that no case-made is attached to the petition in error, or filed in this court; but this is not ground for dismissing the appeal, as under our statute (section 5324, St. 1893) two methods are provided for bringing a judgment of the district court in a criminal case to this court for review, viz., by petition in error, with the original case-made or a certified transcript of the record attached thereto. By section 5292, St. Okla. 1893, it is provided: 'When a judgment upon a conviction has been had, the clerk must enter the same upon the minutes, stating briefly the offense for which the conviction has been had, and must immediately annex together and file the following papers, which constitute a record of the action: (1) The indictment and a copy of the minutes of the pleas or demurrers; (2) a copy of the minutes of the trial; (3) the charges given or refused, and the indorsements, if any, thereon; and (4) a copy of the judgment.' Attached to the petition in error in this cause are papers which the clerk of the district court certifies to be true,

full, and complete copies of the indictment, demurrer, order overruling demurrer, plea, proceedings of trial, instructions, verdict, judgment, and sentence in the cause. While the certificate of the clerk does not, in exact words, recite that these papers contain a full, true, and complete transcript of the record in the cause, yet as they are certified to be true, full, and complete copies of everything which the said section 5292 of the Code makes a part of the record of the cause, they must be held to be a transcript of the record, and properly presenting for our consideration and review any question upon the face of the record. Therefore the motion to dismiss appeal is overruled.

"A motion for a new trial and bill of exceptions are essential only for the purpose of saving and presenting such errors occuring during the progress of the trial as do not appear on the face of the record; but where the errors complained of appear on the face of the record proper, although they may be errors occurring during the progress of the trial, no motion for new trial or bill of exceptions is necessary for their preservation or review. 16 Am. & Eng. Enc. Law, 610, and cases cited. By the record proper is meant that which it is the duty of the court to order, or that which the law makes a part of the judgment roll, without special acts or requests from the parties. Elliot, Gen. Prac. § 190. Under our Code of Criminal Procedure (section 5292, St. 1893) the instructions of the court and the indorsements thereon are a part of the record proper, and any errors therein, if apparent upon the face of the whole of such record, may be reviewed by this court, if the indorsement on said instructions show that exceptions were duly taken, although there be no bill of exceptions or motion for new trial. It is a settled rule that, where the evidence is not in the record upon appeal, a judgment will not be reversed on account of instructions given by the trial court, if on any supposable state of facts, relevant to the issues, the instructions might have been correct. It is equally well settled that, though the evidence is not in the record, a judgment will be reversed if any instruction complained of would not have been correct under any evidence that might have been given under the issues. If, then, the record proper or judgment roll in this case, which contains the charge of the court shows that such charge could not have been correct under any evidence that might have been given under the issues, and that the giving of such charge was excepted to, we may review the same, although the evidence is not in the record."

We indorse the conclusions announced in the above case as being a sound statement of the law, with the further statement that errors appearing in the record, which affect the jurisdiction of the court as to the subject-matter of the offense, are ground for a new trial, whether excepted to or not, and that in felony cases errors appearing upon the face of the record, which deprived the defendant of a substantial right, may be ground for a reversal, although not excepted to upon the trial. See *Vickers v. United States,* 1 Okla. Cr. 542, 98 Pac. 467.

Second. Upon the face of the record it appears that the defendant filed a motion to quash the indictment. Among other objections, it is claimed that the indictment is fatally defective, because it does not allege that the property was wrongfully taken. Section 2208, Wilson's Rev. & Ann. St. 1903, is as follows:

"Robbery is a wrongful taking of personal property, in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Section 5364, Wilson's Rev. & Ann. St. 1903, is as follows:

"Words used in a statute to define a public offense need not be strictly pursued in the indictment, but other words conveying the same meaning may be used."

Every wrongful act is not felonious, but every felonious act is wrongful. The Supreme Court of Alabama, in *Holt v. State,* 86 Ala. 600, 5 South. 793, correctly states the rule as follows:

" * * * If the indictment is framed under a statute which defines the offense created and prescribes its constituents, it must allege in the words of the statute, or other words equivalent in meaning. * * * "

This is in harmony with common sense and with section 5364 of our statute. We therefore hold that, as applied to this case, the allegation that the acts done were feloniously committed necessarily includes the idea that they were wrongfully done. We do not blame lawyers for making technical defenses; but appellate courts are to blame for sustaining them, when the technicalities relied upon do not involve some substantial right of the defendant. At the same time we desire to admonish county attorneys that the

safe course to pursue in charging offenses is to follow the exact language of the statute in defining the offense.

Counsel in their brief say:

"The statute provides that the 'fear' must be of an unlawful injury. The court will notice that the 'fear' produced in the mind of Natcho Deneff was a 'fear' of immediate and 'great' injury to his person. The use of the word 'great' is certainly insufficient. The pleader should have used the word 'unlawful.'"

Section 2211, Wilson's Rev. & Ann. St. 1903, is as follows:

"The fear which constitutes robbery may be either, first, the fear of an unlawful injury, immediate or future, to the person or property of the person robbed or of any relative of his, or member of his family; or, second, the fear of an immediate and unlawful injury to the person or property of any one in the company of the person robbed, at the time of the robbery."

The indictment charged that the defendant and those acting with him "did then and there wilfully, unlawfully and feloniously make an assault upon the person of one Natcho Deneff, and did then and there willfully, unlawfully, and feloniously, wrongfully, forcibly, and conjointly, against the will and consent of him, the said Natcho Deneff, and by means of force and fear of immediate and unlawful injury to the person of him, the said Natcho Deneff, said fear being brought about in the mind of him, the said Natcho Deneff, by said defendant, with force and violence, by striking the said Natcho Deneff on the head with a revolver, a deadly weapon, and threatening to shoot him, the said Natcho Deneff, with said revolver if he resisted, thereby and by means of force did then and there produce in the mind of him, the said Natcho Deneff, fear of immediate and great injury to the person of him, the said Natcho Deneff, sufficient to overcome the resistance of him, the said Natcho Deneff, and while he, the said Natcho Deneff, was under the influence of such fear, so produced as aforesaid, said defendant did feloniously take, steal, and carry away from the person of him, the said Natcho Deneff, the sum of one hundred dollars." The indictment does charge that the assault was unlawful, and that the robbery was accomplished by means of force and fear of immediate and unlawful injury to the person robbed. It

might have been better to have used the words "unlawful injury," instead of "great injury," when this matter is referred to in a subsequent portion of the indictment; but after this expression is used the indictment proceeds, and alleges that while the party robbed "was under the influence of such fear, produced as aforesaid," etc., the robbery was completed. The words "produced as aforesaid" included all the means used in accomplishing the robbery. We therefore hold that the point made was properly overruled by the trial court.

The next objection urged to the indictment is that it does not allege that the property taken was in the possession of the person robbed. It is true that our statute defines robbery to be a "wrongful taking of personal property in the possession of another, from his person or immediate presence," etc. Section 5355, Wilson's Rev. & Ann. St. 1903, is as follows:

"All forms of pleading in criminal actions, and rules by which the sufficiency of pleadings is to be determined are those prescribed by this chapter."

Section 5367, Wilson's Rev. & Ann. St. 1903, is as follows:

"Neither presumptions of law, nor matters of which judicial notice is taken, need be stated in an indictment."

From these sections we understand three things: (1) There can be no robbery, unless the personal property taken was in the possession of the person robbed. (2) All common-law forms of pleading in criminal cases have been abolished in this state, and only those forms prescribed by the statute are to govern our courts in such matters. (3) That presumptions of law and matters of which judicial notice is taken need not be stated in an indictment. Property may be in the possession of a person and still not be on his person; but it is impossible for property to be on the person without also being in the possession of such person. Therefore it is a necessary presumption, and this court takes judicial notice of the fact, that property is in the possession of the person who has it on his person. In cases when property is taken in the immediate presence of its owner, it must be alleged that he was also in possession of such property, or the offense of robbery will not be charged.

But, when the allegation is that the property was taken from the person of another, it will be but an unnecessary repetition to allege that such property was in the possesson of such person, for the first allegation necessarily includes the latter. This would not only be bad pleading, but it is expressly forbidden by statute. Section 5365, Wilson's Rev. & Ann. St. 1903, defines the rules of pleading in an indictment. Paragraph 6 of this statute is as follows:

"That the act of omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

We therefore hold that the trial court did not err in overruling this objection to the indictment. The indictment in this case was not artistically drawn, and is subject to criticism in some respects; but, taken as an entirety, it is good under our statutes. We therefore sustain the action of the trial court in overruling the motion to quash the indictment.

Third. The defendant complains that the verdict of the jury finding the defendant guilty is void for uncertainty, because it does not find the degree for which he was convicted. The answer to this objection is found in the fact that there are no degrees in conjoint robbery, and but one punishment can be inflicted.

Fourth. There are some inaccuracies in the instructions given; but, taken as a whole, the instructions are correct, and favorable to the defendant. The evidence not being before us in such a manner as would authorize us to act upon it officially, and the inaccuracies in the instructions being formal, rather than fundamental, and as they are not presented or complained of in the brief of counsel for the defendant, we are not at liberty to consider them. The correct rule in such cases is stated by Judge Tarsney in *Lee v. State*, 7 Okla. 565, 54 Pac. 793, as follows:

"It is a settled rule that, where the evidence is not in the record upon appeal, a judgment will not be reversed on account of instructions given by the trial court, if on any supposable state

of fact, relevant to the issues, the instructions might have been correct."

In *Brooks v. State,* 2 Tex. App. 1, the objection to what purported to be a statement of facts having been sustained, the court said:

"We must presume that the charge of the court presented the law applicable to the facts, and we must further presume that the verdict and judgment were fully warranted by the evidence."

In *Wright v. State,* 37 Tex. Cr. R. 146, 38 S. W. 1004, the court said:

"Where the charge is applicable to any state of facts that might be made by the testimony under the allegations of the instrument, this court will assume that the court below submitted to the jury the law of the case, and all of the law required by the testimony, or any portion of the same. In the absence of a statement of facts, we cannot assume that the testimony presented certain defenses, and reverse the judgment because the court did not charge thereon. Should we consider the statement of facts in the record, we think the evidence supports the verdict; but this we cannot do. We assume the verdict was supported by the testimony, and the judgment is affirmed."

The doctrine that where a defendant has been convicted, and appeals, and the evidence is not properly before the court, unless it appears from the record that fundamental error has been committed, the court will not reverse the conviction, is sustained by the following Texas cases: *Chandler v. State,* 2 Tex. 306-308; *Barrett v. State,* 25 Tex. 605-610; *Kindred v. State,* 32 Tex. 609; *Henrie v. State,* 41 Tex. 575-577; *Washington v. State,* 41 Tex. 583-584; *Keef v. State,* 44 Tex. 584; *Branch v. State,* 1 Tex. App. 99, 100; *Trammell v. State,* 1 Tex. App. 121-124; *Mahl v. State,* 1 Tex. App. 127-129;; *Ferrell v. State,* 2 Tex. App. 399-402; *Mitchell v. State,* 2 Tex. App. 404, 405; *Edwards v. State,* 2 Tex. App. 525, 526; *Booker v. State,* 3 Tex. App. 227; *Robinson v. State,* 3 Tex. App. 487; *Owens v. State,* 4 Tex. App. 153, 154; *Carter v. State,* 5 Tex. App. 458-462; *Lawrence v. State,* 7 Tex. App. 192; *White v. State,* 9 Tex. App. 41-43; *Thompson v. State,* 9 Tex. App. 649-666; *Lynn v. State,* 28 Tex. App.

515-516, 13 S. W. 867; *Alstrop v. State,* 31 Tex. Cr. R. 467, 20 S. W. 989; *Kutch v. State,* 32 Tex. Cr. R. 184, 185, 22 S. W. 594; *Hall v. State,* 33 Tex. Cr. R. 537, 28 S. W. 200; *Mootry v. State,* 35 Tex. Cr. R. 450-455, 33 S. W. 877, 34 S. W. 126; *Green v. State* (Cr. App.) 20 S. W. 366; *Bailey v. State,* (Cr. App.) 20 S. W. 1102; *Day v. State* (Cr. App.) 21 S. W. 370; *Goodson v. State* (Cr. App.) 22 S. W. 20; *Barnett v. State* (Cr. App.) 29 S. W. 43; *Burbank v. State* (Cr. App.) 29 S. W. 383; *Nichols v. State* (Cr. App.) 29 S. W. 385; *Oates v. State* (Cr. App.) 30 S. W. 554; *Jones v. State* (Cr. App.) 31 S. W. 644; *Seidel v. State* (Cr. App.) 41 S. W. 607; *White v. State* (Cr. App.) 42 S. W. 303; *Moss v. State,* 39 Tex. Cr. R. 3, 43 S. W. 983; *Sanchez v. State,* 39 Tex. Cr. R. 389, 46 S. W. 249; *Saragosa v. State,* 40 Tex. Cr. R. 64, 48 S. W. 190; *Moore v. State* (Cr. App.) 53 S. W. 862. These cases are too numerous, and the propositions which they assert are too well settled, to require that we discuss them in detail, or that we cite additional authorities in support of this rule of law.

Section 21, art. 11, c. 14, p. 173, of the Session Laws of 1909, is as follows:

"In all criminal cases wherein any person has been convicted of crime in any court in this state prior to the date of the passage and approval of this act, and in all other criminal cases wherein the state of Oklahoma is required by law to assume the care control, custody and jurisdiction of persons convicted of crime, in any court in Indian or Oklahoma Territories, prior to statehood, and in any of the cases hereinbefore enumerated, wherein any person has been convicted and sentenced by any of the aforementioned courts to any prison, or penitentiary, situated outside of the territory now comprising the state of Oklahoma, and any such person so convicted and sentenced having heretofore taken an appeal from such conviction and sentence, which appeal is now pending before the Criminal Court of Appeals of this state; and upon the hearing of such appeals, should the Criminal Court of Appeals be of opinion that the conviction and sentence in such case should be affirmed, said court shall have the power to modify the sentence of the trial court in said case, to the extent of changing the place of confinement of the appellant, or appellants, from

the prison or penitentiary situate without the state of Oklahoma designated in the judgment of said trial court, to such other place of confinement within the state as may be provided by law for persons convicted of crime."

This case was tried before the penitentiary of Oklahoma was established at South McAlester, and under the law then in force the defendant was sentenced to imprisonment in the state penitentiary of Oklahoma, which was then the state penitentiary at Lansing, Kan., and that he be confined therein for life at hard labor, from the date of such sentence. In conformity with the statute above quoted, said sentence and judgment is modified, and the place of his confinement is changed to the state penitentiary of Oklahoma, located at South McAlester, Okla., and upon receipt of this opinion the clerk of the district court of Lincoln county is directed to issue an order to the sheriff of Lincoln county, in conformity with the judgment of the district court of Lincoln county as above modified.

Affirmed.

DOYLE and OWEN, JUDGES, concur.

---

## ON MOTION FOR REHEARING.

### Denied January 9, 1911.

APPEAL—Change of Judge During Trial—Time to Object. An objection that there was a change in the presiding judge during the trial of a cause comes too late when this objection is urged for the first time after the cause has been affirmed and upon motion for rehearing, and when the appellate court has judicial knowledge that the judge presiding during such change was the regular judge of the court in which the trial was had.

(Syllabus by the Court.)

*John Embry,* for the motion.

*Charles L. Moore,* Asst. Atty. Gen., for the State.

PER CURIAM. One of the grounds relied upon in the motion for a rehearing is that the record discloses the fact that

the Hon. W. N. Maben presided over the court in which appellant was tried during part of the time when the testimony was being received and also at the time the verdict was rendered. This objection was not relied upon in the motion for a new trial, and was not incorporated in the petition in error, and was not presented upon appeal when the case was first submitted to this court, and the record fails to show that an objection was made in the lower court upon the part of appellant to the fact that Judge Maben presided over any part of his trial. The great weight of authorities is to the effect that there can not lawfully be a change of the presiding judge during the trial of a cause, but the authorities are not all to this effect.

"A change of the presiding judge during the trial of a cause is not necessarily a cause for reversal, unless some special harm or prejudice has resulted by reason of such change." (Ency. Pl. & Pr., vol. 21, p. 1002.)

See, also, *Hendrix v. Bell*, 84 Ill. App. 523; *Pegalow v. State,* 20 Wis, 61; *Lamphere v. State,* 114 Wis. 193; *Bullock v. Neal,* 42 Ark. 279.

We take judicial notice of the fact that Judge Maben was the regular judge of the district court of Lincoln county, and as such he had authority to preside over the trial of all cases therein pending. In view of the fact that the objection now urged was made for the first time upon motion for rehearing, we are of the opinion that it comes too late. The other grounds relied upon in the motion for rehearing were all fully considered in the original opinion of this court.

Motion for rehearing is denied.