# JAMES W. DOBBS v. STATE.

No. A-313.   Opinion Filed March 21, 1911.

On Petition for Rehearing May 2, 1911.

(114 Pac. 358; 115 Pac. 320.)

APPEAL—Record—Preparation and Service of Case-Made—Extension of Time—Power of Judge—Supplying Omitted Matter—Transfer of Cause—Methods—Dismissal—Absence of Certification of Transcript.   (a) A judge pro tempore may fix the time within which a case-made may be prepared and served; but after he has fixed such time, and has vacated the bench as such judge pro tempore he cannot extend the time for preparing and serving such case-made.

(b) If a judge pro tempore has tried a case, and has fixed the time within which a case-made may be prepared and served, and it is desired to secure an extension of time to prepare and serve such case-made, such extension of time may be granted by the regular judge of the district in which the case was tried, or it may be granted by any judge who may be presiding in said court; but, if granted by the judge presiding in said court, the record must show that court was actually in session at the time that the extension was granted by the court.

(c) If the time fixed has expired within which a case-made may be prepared and served, no judge or court has power to extend such time.

(d) Under section 6077, Snyder's Comp. Laws of Oklahoma 1909, where a transcript of the record or case-made has been filed in this court in due time, and by proper motion it is made to appear that any matter is of record in the court from which the appeal is taken, touching the cause appealed or any evidence heard on the trial of said cause, or that any statement or certificate, or motion or other matter, is omitted from such record or case-made, or are insufficiently stated therein, this court will allow the appellant a reasonable time within which to prepare such omitted parts of the transcript of the record or case-made under the direction of the trial judge, and file such corrections in this court, and when so filed such corrections or added parts will have the same force and effect as though they had been originally incorporated in the record or case-made when first filed in this court.

(e) Our statute provides for two methods of prosecuting an appeal, viz., upon the transcript of the record, accompanied by a case-made, or upon a transcript of the record alone.   If the first method is pursued, and for any reason the case-made is fatally defective, the appeal will be considered upon the transcript of the record alone.   But if the transcript of the record is not prop-

erly certified to by the clerk of the court, the appeal will be dismissed.

(Syllabus by the Court.)

*Appeal from District Court, Roger Mills County; James R. Tolbert, Judge.*

James W. Dobbs was convicted of manslaughter in the first degree, and he appeals. Dismissed.

*R. B. Forrest* and *John B. Harrison,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., *Charles M. Thacker,* and *Claude Weaver,* for the State.

FURMAN, PRESIDING JUDGE. Appellant was found guilty of the crime of manslaughter in the first degree in the district court of Roger Mills county, Okla., and his punishment was assessed at imprisonment in the penitentiary for a period of 15 years.

Hon. G. A. Brown, the regular judge of the Eighteenth judicial district, who presides over the district court of Roger Mills county, was disqualified to try this cause, and the Hon. James R. Tolbert, judge of the Seventeenth judicial district of the state of Oklahoma, was regularly assigned by the Chief Justice of the Supreme Court to try this cause.

Judgment was pronounced against the defendant on the 21st day of September, 1909, and the defendant was allowed by the court 30 days within which to make and serve a case-made. Subsequently to this time various orders were made by Judge Tolbert, granting the defendant extensions of time within which to prepare and serve a case-made. The record shows that the case-made was served on the 24th day of July, 1909. Under our system a special judge who presides at the trial of a case may fix the time within which a case-made may be prepared and served, but after he vacates the bench and loses control over the docket, he has no power to grant an order extending such time. This has never been an open question in Oklahoma. For a full citation and discussion of all the authorities on this question, see *Ras-*

*berry v. State*, 4 Okla. Cr. 613, 103 Pac. 865, 112 Pac. 759. If additional time is desired for preparing and serving a case-made, application should be made either to the regular judge of the district court or to such judge as may be then presiding in said district, and is therefore the court; or the appellant may file a transcript of the record in this court within the time originally granted, and, having thus perfected his appeal and this court having acquired jurisdiction of the cause, we have power, under section 6077 of Snyder's Comp. Laws of Oklahoma 1909, to grant the defendant such time as he may require to perfect and serve his case-made. This course was adopted by counsel for appellant in the case of *Hunter v. State*, 3 Okla. Cr. 535, 107 Pac. 444. For a full discussion of this question see *John Farmer v. State* (decided at the January term of this court) *ante*, 114 Pac. ――.

Counsel for the appellant attempted to explain their failure to file a case-made in this court at an earlier date by the following affidavits:

"State of Oklahoma, County of Canadian.

"R. B. Forrest, being first sworn according to law, on his oath states that he has been one of the attorneys of the defendant from the time of his arrest under the charge for which he was indicted in the above-entitled cause, at all times during the progress and history of said proceedings. Affiant further states that on the conviction of the defendant in said cause, the defendant prayed an appeal to the criminal court of appeals in said action; that immediately thereafter the defendant demanded of the official court stenographer who acted in the trial of said cause a transcript of the evidence and the proceedings as taken by said stenographer during the progress of the trial of said cause, and defendant then and there paid to said stenographer the amount of money which said stenographer demanded for the performance of said work, and said stenographer then and there promised and agreed to take said matter up at the earliest opportunity; that thereafter said stenographer failed to furnish the transcript and gave as an excuse the want of time in which to prepare the same; that extensions of time were obtained on several occasions in order to procure the said stenographic report

of said stenographer, and the defendant and his counsel at all times expected to receive such transcript from said stenographer, until some time during the month of April, 1909, when counsel for the defendant were advised that the notes of the stenographer had been lost or stolen and could not be found, and said counsel were advised that said stenographer had placed his stenographic report in a valise and had checked said valise at the railroad depot, and the railroad company had lost the same, and that in said manner said books containing the notes and reports of said stenographer were hopelessly lost. Affiant further states that as soon as it discovered that the defendant would be unable to furnish a report prepared by said stenographer as a true and correct statement of the evidence presented, and matters and things occurring at said trial, counsel for the defendant proceeded to prepare a case from notes and memory and such data as they could gather together for the purpose of recalling and preparing a full and complete history of the proceedings of said trial. Affiant further states that in the preparation of the hereto-attached and foregoing case affiant has had at his command a stenographic report of the evidence taken at the preliminary trial of the defendant, and depositions taken prior to the trial of said cause, which said stenographic report of the proceedings at the preliminary trial and said depositions had been used and were used on an application made by defendant for bail prior to the trial of said cause; that with the exception of a few witnesses called at the trial by the state and a few called at the trial by the defendant the evidence herein prepared is the testimony of the witnesses as given at the preliminary trial and in said depositions, and is in substance the same as the evidence of said witnesses given in the trial of said cause; that the foregoing and hereto-attached prepared case contains a true and correct statement of the proceedings had at said trial and contains, as nearly as it is possible to prepare and present the same, all the evidence that was presented in said trial; and affiant states that the same contains all the evidence presented at said trial bearing upon the matters at issue therein, and that the same is true and correct. R. B. Forrest.

"Subscribed and sworn to before me, this 21st day of July, 1909. F. E. Sanson, Notary Public. [Seal.]
"My commission expires January 4, 1913.

"State of Oklahoma, Roger Mills County—ss.:

"I, Jno. B. Harrison, do upon my oath say, that I have read the above and foregoing affidavit of R. B. Forrest, and know the contents thereof, and know that the statements therein made are substantially correct. Jno. B. Harrison, Atty. for Plaintiff in Error.

"Subscribed and sworn to before me this the 24th day of July, 1909. W. P. Madden, Clerk of the Dist. Court, by F. M. Mullen, Deputy. [Seal.]"

If proper steps had been taken to give this court jurisdiction in proper time, counsel could have secured from this court an order giving appellant all the time which he might need to perfect and serve his case-made, but after the time fixed by the trial court for preparing and serving a case-made has expired, no court or judge has power to extend such time. For a citation of all of the cases on this question, see *Nelson Hawkins v. State* (decided at this term), *ante*, 114 Pac. 356.

The mere fact that a stenographer may have lost his notes, or that they may have been stolen from him, would not constitute a valid excuse for a failure on the part of the appellant to prepare and serve a case-made. If it did, every judgment entered by any court of record would be at the mercy of the carelessness and dishonesty of the court stenographer. While the stenographer's notes of the testimony constitute the most convenient means of preparing a case-made, yet they are not the only source from which a case-made may be prepared. Even when a case-made is prepared from the stenographer's notes of the testimony, it must still be approved by the judge who tried the case, and he is not bound by such notes, but must still see that the case-made speaks the truth, and he may correct such case-made from memory or from any source that may be satisfactory to him. But it appears from the affidavit of counsel for appellant that they were not aware of the alleged loss of the stenographer's notes until long after the time originally fixed by the trial court for preparing and serving the case-made had expired, and after it was beyond the power of any judge or court to extend such time.

We must therefore strike the case-made from the record. We

cannot consider this appeal upon the transcript of the record, because it is not properly certified to by the clerk of the district court of Roger Mills county as a true and correct copy of the record in the court below. See *Perky v. State,* 4 Okla. Cr. 239, 111 Pac. 663; *Gibson v. State,* 3 Okla. Cr. 594, 107 Pac. 739. We must therefore dismiss this appeal.

ARMSTRONG and DOYLE, JUDGES, concur.

---

## ON PETITION FOR REHEARING.

Rehearing Denied May 2, 1911.

(115 Pac. 370.)

1.   JUDGES—Judge of One District Holding Court in Another—Powers—"Judge Pro Tempore." (a) Where a judge of one district of the state is assigned by the Chief Justice of the Supreme Court to hold court in another district of the state, such judge, while so holding such term of court, is a "judge pro tempore" of such district.

(b)   A judge of any district of this state has no right or power to perform judicial acts affecting cases pending in any other district, unless he is authorized to do so by some constitutional or statutory provision.

2.   EVIDENCE—Judicial Notice—Seal of District Court—Signature of Clerk—Appeal—Preparation and Verification of Record—Regulation—Statutes—Jurisdiction—Consent — Scope of Review — Instructions—Reasonable Doubt. (a) This court will·take judicial notice of the seal of a district court in this state, but not of the signature of a clerk of such court, unless such signature is. verified by the seal of the court.

(b)   A certificate to a transcript of the record from a district court, not verified by the seal of such court, is no more than so much blank paper, and will not give this court jurisdiction to consider an appeal upon such pretended transcript of the record.

(c)   It is the duty of attorneys who desire to appeal cases to this court to see that their records are properly prepared and verified in compliance with the law, before filing them in this. court.

(d)   While an appeal is a constitutional right, yet the man–

ner of taking it is subject to legislative control, and' a failure upon the part of attorneys to comply with the legislative provisions relating to an appeal will be fatal to such appeal.

(e) Where an attempt has been made to appeal a case, and the provisions of law' regulating the manner of taking an appeal are not complied with, this court does not obtain jurisdiction of such case, and the attorneys for the state cannot, by consent, give this court jurisdiction, and cannot by any action of theirs waive a want of jurisdiction.

(f) Where the case-made has been stricken out and the appeal is being considered alone upon the transcript of the record, we only can consider such objections to the instructions of the court as would be erroneous under any statement of facts that might have been proven.

(g) Where the court instructs the jury that if, upon a consideration of all the evidence, facts, and circumstances presented upon the trial, they entertain a reasonable doubt as to the guilt of the defendant, they should acquit him, will not warrant a reversal of a conviction, upon the ground that it does not authorize the jury to find the defendant not guilty, on account of the lack of evidence against him. **Moore v. State,** 4 Okla. Cr. 212, 111 Pac. 822, reaffirmed.

(Syllabus by the Court.)

FURMAN, Presiding Judge. We have been favored with able and exhaustive briefs and oral arguments supporting and in opposition to the motion for a rehearing.

First. It is admitted by counsel for appellant that the rule is correctly stated in *Rasberry's Case,* 4 Okla. Cr. 613, 103 Pac. 865, to the effect that a judge *pro tempore* may fix the time within which a case-made may be prepared and served, and that when such time has expired, or he has vacated the bench as such judge *pro tempore,* he has no power to extend such time. But counsel earnestly contend · that Judge James R. Tolbert was a judge of the state of Oklahoma, and that he was not therefore a judge *pro tempore.* In the case of *Bank of Minco v. Struss,* 4 Okla. 162, 44 Pac. 273, this question was decided against the contention of counsel for appellant. In that case Judge McAttee had been assigned to the Fifth judicial district of the territory of Oklahoma. Judge Burford had been assigned to the Second judicial district of the territory of Oklahoma. Both of these judges were regular judges of the territory of Oklahoma. Acting under and

5 Cr.—31

by virtue of an order of the Honorable Frank Dale, Chief Justice of the Supreme Court of Oklahoma Territory, Judge McAtee was appointed to sit, try, hear, and determine a case in the Second judicial district of the territory of Oklahoma, and did so. The matter coming later before the Supreme Court of Oklahoma Territory, it was in express terms decided that Judge McAtee, while holding court in the Second judicial district, was a judge *pro tempore*. The same question was decided against the contention of appellant by the Supreme Court of Kansas in *Re Millington*, 24 Kan. 214, by Judge Brewer, who was afterwards a distinguished member of the Supreme Court of the United States.

Under our Constitution, § 9, art. 7, the state of Oklahoma is divided into judicial districts, and one or more judges are elected to preside over the district courts in each of such districts. It further provides that in case of the illness of any judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected, the Chief Justice may designate any district judge in the state to hold any term of court in said district, in lieu of the judge elected to hold the courts of said district. In compliance with this provision of the Constitution, the Chief Justice of the Supreme Court of the state of Oklahoma, on the 22d day of July, 1908, caused the following order to be entered on the court journal of said Supreme Court:

"It is hereby ordered, that the Honorable J. R. Tolbert, judge of the 17th district court judicial district of the state of Oklahoma, is hereby appointed, designated and assigned to hold court in the 18th district court judicial district of said state at Cheyenne, in Roger Mills county, commencing with the 14th day of September, A. D. 1908, and to continue to and include the 26th day of September, A. D. 1908: Provided, that nothing in this order shall effect or invalidate any proceedings, process, or orders heretofore had, issued or made in said court."

The judge of any district of the state has no right or power to perform judicial acts in cases pending in any other district of the state, unless he is authorized to do so by some constitutional or statutory provision. Judge Tolbert's power to hold court in the Eighteenth judicial district rested entirely upon the order

of the Chief Justice of the Supreme Court of Oklahoma above quoted, and was limited to the time mentioned in said order. Beyond controversy Judge Tolbert was a judge *pro tempore* of the Eighteenth judicial district from the 14th day of September, 1908, to the 26th day of September of said year, and when said time expired all of the powers which he derived by virtue of such order also expired, except the power to settle and sign a case-made in a case tried before him during such time. This power is conferred upon him by an express provision of our statutes.

If, acting under constitutional or legislative provisions, any attorney is agreed upon by the parties to a case, to act as judge in the trial of said cause, or is elected to try said cause in the manner provided by law, such person so agreed upon or elected would, for the purposes of such trial, have all of the powers exercised by the regular judge of the district, and he would be as much the judge of that district and the court as the regularly elected judge would be, if presiding. There is no difference whatever in the powers of the regular judge and judge *pro tempore*, so far as the trial of the case in question is concerned.

The words *"pro tempore"* mean for the time being, and they distinguish the judge who tries a single case, or who holds court in a district for a limited period of time, from the regular judge of the district. We therefore cannot agree with the contention of counsel for appellant that Judge Tolbert was not a judge *pro tempore* as applicable to this case, and that the time having expired within which he was authorized to hold court in the Eighteenth judicial district, he had the power to grant an extension of time to prepare and serve a case-made. We feel compelled to adhere to the rule announced repeatedly by the Supreme Court of Oklahoma Territory, by the Supreme Court of the state of Oklahoma, and by this court, that a judge *pro tempore*, after he has vacated the bench and is no longer the court, cannot extend the time within which the case-made may be prepared and served, and that any such order is void, and a case-made served after the expiration of the time fixed in the original order must be stricken from the record, unless before the expiration of such time it has

been extended by the regular judge of the district, or some one legally holding court in said district, or unless before the expiration of such time this court has acquired jurisdiction of said cause by appeal, and has granted time to the appellant to perfect his appeal, as provided for by section 6077 of Snyder's Comp. Laws of Okla. 1909.

Second.   What purports to be the transcript of the record in this case is not verified by the seal of the district court of Roger Mills county.   We take judicial notice of the seal of a district court of this state, but not of the signature of the clerk of such court, unless it is verified by the seal of the court.   We cannot even take judicial notice of the signature of a district judge approving a case-made, unless it is attested by the clerk of the court and verified by the seal of the court.   The clerk attests; the seal verifies.   It is the seal that gives character and verity to the certificate to the transcript of the record, and a certificate to a transcript of the record which is not verified by the seal of the court from which it purports to emanate is no more than so much blank paper.   An instructive case upon this question is that of *Blitz v. Brown,* 8 Wall. 693, 19 L. Ed. 280.   This was a case of a writ of error to the Supreme Court of the District of Columbia. What purported to be a transcript contained only a blank form of certificate of authentication, without the seal of the court below, or the signature of its clerk.   Two motions were made, the first by Mr. Carlile, the attorney for the defendant in error, to dismiss the case.   The second by Mr. Bradley, the attorney for plaintiff in error, for leave to withdraw the paper from the files, in order that the blank certificate might be duly signed and sealed, and when thus perfected to allow it to be returned and have its place on the docket as if it had been regularly filed according to law.   The Chief Justice of the Supreme Court of the United States delivered the opinion of the court as follows:

"The filing of such a paper, as has been filed in this case, is not the filing of the transcript at the next term after the issuing of the writ of error, without which we can have no jurisdiction of the case.   The motion to dismiss must be allowed."

No safer or higher authority can be cited. Filing a paper in this court not duly verified by the seal of the court from which it purports to come, is not filing a transcript of the record in the case, and does not give this court jurisdiction of an appeal. It is the duty of attorneys who desire to appeal cases to see that their records are properly prepared and verified in compliance with the law, before filing them in this court.

While it is true that an appeal is a constitutional right, yet it is subject to legislative regulation, and a failure to comply with the legislative provisions touching this matter is fatal to an appeal. Attorneys complain that the laws relating to appeals are entirely too strict and rigid. We think that directly the opposite is true. The writer of this opinion for many years practiced law in Texas, where the statement of facts and bill of exceptions had to be prepared and placed in the hands of the trial judge not later than 10 days after the adjournment of the court in which the case was tried. We had no stenographers then, and this work had to be done by the lawyers themselves, and from memory alone. The writer never had the least difficulty in getting up any of his records. The Reports of the appellate courts of Texas will show that very few defective records are filed in those courts. When lawyers know that work of this kind must be done "right now," it will not only be done promptly, but will also be done correctly. On the other hand, if attorneys have months in which to have their records made up, and then have the assistance of a stenographer in preparing this work, they often put the work off until the very last moment, when it is apt to be hurriedly and carelessly done, and many mistakes will be made. When this case was tried, the attorneys had one year within which to perfect their appeals. In this case counsel took all of this time. To the length of time which the appellant had within which to perfect his appeal must be attributed the fatal errors that were made in the preparation of the case-made and the transcript of the record. If the law had required this work to have been done promptly, the chances are ten thousand to one that it would have been done correctly. A very large per cent. of the records that are brought to this

court and the Supreme Court of this state are in a fatally defective condition, as is evidenced by the large number of dismissals which have been entered in each court. We think that the length of time granted by the law in which appeals may be perfected is largely responsible for this.

Counsel for appellant take the position that because the state filed a brief in this case the fact that the transcript of the record was not verified was waived. This being a jurisdictional question, the defect could not be waived by the attorneys for the state. The state did not file a motion to dismiss this cause because the transcript of the record was not properly verified. This court deems it to be its duty to examine every record submitted to it, to see if it has been brought to this court in such a manner as to give the court jurisdiction thereof, and when a want of jurisdiction appears this court is without power to consider any questions attempted to be submitted, and upon its own motion will dismiss the appeal. The case-made having been stricken from the record, even if we could consider the transcript of the record there is only one assignment of error which we could pass upon, in the absence of the testimony in the case.

Upon the subject of reasonable doubt, the court instructed the jury as follows:

"By the term 'reasonable doubt,' as used in these instructions, is meant that state of the case which, after a full consideration of all the evidence, leaves your minds in that condition that you cannot say that you feel an abiding conviction of the guilt of the defendant. You should not go beyond the evidence to hunt for doubt, or entertain doubt from mere caprice or conjecture. Such doubt should arise only from a candid and impartial and honest consideration of all the evidence, and the facts and circumstances presented upon the trial, and if, upon such consideration, doubt does so arise, and by reason of it you cannot say that you are satisfied to a moral certainty of the guilt of the defendant, you should return your verdict of not guilty."

The contention of counsel for appellant is that under this instruction the jury would not be authorized to find the defendant not guilty on account of the lack of evidence against him. We

have heretofore considered this question in the case of *Moore v. State,* 4 Okla. Cr. 212, 111 Pac. 822. In that case Judge Richardson said:

"Plaintiffs in error complain of that portion of the above instruction wherein the court said, 'A doubt, to justify an acquittal, must be reasonable and arise from a candid and impartial consideration of all the evidence in the case.' The contention is that a doubt might arise from a lack of evidence, and that this portion of the instruction precludes that. We think the objection not well taken. A reasonable doubt might well arise from a candid and impartial consideration of all the evidence in the case, because the jury thought that all the evidence thus candidly and impartially considered was not sufficient to establish the defendant's guilt beyond a reasonable doubt; that it was wanting in quality or in quantity—in other words, that there was a lack of convincing evidence. And if, in fact, such a lack of evidence existed, that fact could be ascertained only by a candid and impartial consideration of all the evidence that had been given. It would perhaps be better, where the court sees proper to define reasonable doubt at all, to substitute for the expression objected to the statement that a reasonable doubt is an actual doubt, arising from the evidence or the want of evidence in the case; but we do not hold that the instruction as given was erroneous."

The consideration of all the evidence in the case necessarily includes the consideration of the question of a want of evidence. We must assume that the jury was composed of men of at least ordinary intelligence, and that they understood the English language. It is therefore apparent that, even if the transcript of the record had been verified as the law directs, we would have been forced to affirm this conviction upon such transcript.

The motion for a rehearing is denied.

ARMSTRONG and DOYLE, JUDGES, concur.