We have been favored with able and exhaustive briefs and oral arguments supporting and in opposition to the motion for a rehearing.
First. It is admitted by counsel for appellant that the rule is correctly stated in Rasberry's Case, 4 Okla. Cr. 613,103 P. 865, to the effect that a judge pro tempore may fix the time within which a case-made may be prepared and served, and that when such time has expired, or he has vacated the bench as such judge pro tempore, he has no power to extend such time. But counsel earnestly contend that Judge James R. Tolbert was a judge of the state of Oklahoma, and that he was not therefore a judgepro tempore. In the case of Bank of Minco v. Struss, 4 Okla. 162,44 P. 273, this question was decided against the contention of counsel for appellant. In that case Judge McAttee had been assigned to the Fifth judicial district of the territory of Oklahoma. Judge Burford had been assigned to the Second judicial district of the territory of Oklahoma. Both of these judges were regular judges of the territory of Oklahoma. Acting under and *Page 482 
by virtue of an order of the Honorable Frank Dale, Chief Justice of the Supreme Court of Oklahoma Territory, Judge McAtee was appointed to sit, try, hear, and determine a case in the Second judicial district of the territory of Oklahoma, and did so. The matter coming later before the Supreme Court of Oklahoma Territory, it was in express terms decided that Judge McAtee, while holding court in the Second judicial district, was a judgepro tempore. The same question was decided against the contention of appellant by the Supreme Court of Kansas in Re Millington,24 Kan. 214, by Judge Brewer, who was afterwards a distinguished member of the Supreme Court of the United States.
Under our Constitution, § 9, art. 7, the state of Oklahoma is divided into judicial districts, and one or more judges are elected to preside over the district courts in each of such districts. It further provides that in case of the illness of any judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected, the Chief Justice may designate any district judge in the state to hold any term of court in said district, in lieu of the judge elected to hold the courts of said district. In compliance with this provision of the Constitution, the Chief Justice of the Supreme Court of the state of Oklahoma, on the 22d day of July, 1908, caused the following order to be entered on the court journal of said Supreme Court:
"It is hereby ordered, that the Honorable J.R. Tolbert, judge of the 17th district court judicial district of the state of Oklahoma, is hereby appointed, designated and assigned to hold court in the 18th district court judicial district of said state at Cheyenne, in Roger Mills county, commencing with the 14th day of September, A.D. 1908, and to continue to and include the 26th day of September, A.D. 1908: Provided, that nothing in this order shall effect or invalidate any proceedings, process, or orders heretofore had, issued or made in said court."
The judge of any district of the state has no right or power to perform judicial acts in cases pending in any other district of the state, unless he is authorized to do so by some constitutional or statutory provision. Judge Tolbert's power to hold court in the Eighteenth judicial district rested entirely upon the order *Page 483 
of the Chief Justice of the Supreme Court of Oklahoma above quoted, and was limited to the time mentioned in said order. Beyond controversy Judge Tolbert was a judge pro tempore of the Eighteenth judicial district from the 14th day of September, 1908, to the 26th day of September of said year, and when said time expired all of the powers which he derived by virtue of such order also expired, except the power to settle and sign a case-made in a case tried before him during such time. This power is conferred upon him by an express provision of our statutes.
If, acting under constitutional or legislative provisions, any attorney is agreed upon by the parties to a case, to act as judge in the trial of said cause, or is elected to try said cause in the manner provided by law, such person so agreed upon or elected would, for the purposes of such trial, have all of the powers exercised by the regular judge of the district, and he would be as much the judge of that district and the court as the regularly elected judge would be, if presiding. There is no difference whatever in the powers of the regular judge and judgepro tempore, so far as the trial of the case in question is concerned.
The words "pro tempore" mean for the time being, and they distinguish the judge who tries a single case, or who holds court in a district for a limited period of time, from the regular judge of the district. We therefore cannot agree with the contention of counsel for appellant that Judge Tolbert was not a judge pro tempore as applicable to this case, and that the time having expired within which he was authorized to hold court in the Eighteenth judicial district, he had the power to grant an extension of time to prepare and serve a case-made. We feel compelled to adhere to the rule announced repeatedly by the Supreme Court of Oklahoma Territory, by the Supreme Court of the state of Oklahoma, and by this court, that a judge pro tempore, after he has vacated the bench and is no longer the court, cannot extend the time within which the case-made may be prepared and served, and that any such order is void, and a case-made served after the expiration of the time fixed in the original order must be stricken from the record, unless before the expiration of such time it has *Page 484 
been extended by the regular judge of the district, or some one legally holding court in said district, or unless before the expiration of such time this court has acquired jurisdiction of said cause by appeal, and has granted time to the appellant to perfect his appeal, as provided for by section 6077 of Snyder's Comp. Laws of Okla. 1909.
Second. What purports to be the transcript of the record in this case is not verified by the seal of the district court of Roger Mills county. We take judicial notice of the seal of a district court of this state, but not of the signature of the clerk of such court, unless it is verified by the seal of the court. We cannot even take judicial notice of the signature of a district judge approving a case-made, unless it is attested by the clerk of the court and verified by the seal of the court. The clerk attests; the seal verifies. It is the seal that gives character and verity to the certificate to the transcript of the record, and a certificate to a transcript of the record which is not verified by the seal of the court from which it purports to emanate is no more than so much blank paper. An instructive case upon this question is that of Blitz v. Brown, 8 Wall. 693,19 L.Ed. 280. This was a case of a writ of error to the Supreme Court of the District of Columbia. What purported to be a transcript contained only a blank form of certificate of authentication, without the seal of the court below, or the signature of its clerk. Two motions were made, the first by Mr. Carlile, the attorney for the defendant in error, to dismiss the case. The second by Mr. Bradley, the attorney for plaintiff in error, for leave to withdraw the paper from the files, in order that the blank certificate might be duly signed and sealed, and when thus perfected to allow it to be returned and have its place on the docket as if it had been regularly filed according to law. The Chief Justice of the Supreme Court of the United States delivered the opinion of the court as follows:
"The filing of such a paper, as has been filed in this case, is not the filing of the transcript at the next term after the issuing of the writ of error, without which we can have no jurisdiction of the case. The motion to dismiss must be allowed." *Page 485 
No safer or higher authority can be cited. Filing a paper in this court not duly verified by the seal of the court from which it purports to come, is not filing a transcript of the record in the case, and does not give this court jurisdiction of an appeal. It is the duty of attorneys who desire to appeal cases to see that their records are properly prepared and verified in compliance with the law, before filing them in this court.
While it is true that an appeal is a constitutional right, yet it is subject to legislative regulation, and a failure to comply with the legislative provisions touching this matter is fatal to an appeal. Attorneys complain that the laws relating to appeals are entirely too strict and rigid. We think that directly the opposite is true. The writer of this opinion for many years practiced law in Texas, where the statement of facts and bill of exceptions had to be prepared and placed in the hands of the trial judge not later than 10 days after the adjournment of the court in which the case was tried. We had no stenographers then, and this work had to be done by the lawyers themselves, and from memory alone. The writer never had the least difficulty in getting up any of his records. The Reports of the appellate courts of Texas will show that very few defective records are filed in those courts. When lawyers know that work of this kind must be done "right now," it will not only be done promptly, but will also be done correctly. On the other hand, if attorneys have months in which to have their records made up, and then have the assistance of a stenographer in preparing this work, they often put the work off until the very last moment, when it is apt to be hurriedly and carelessly done, and many mistakes will be made. When this case was tried, the attorneys had one year within which to perfect their appeals. In this case counsel took all of this time. To the length of time which the appellant had within which to perfect his appeal must be attributed the fatal errors that were made in the preparation of the case-made and the transcript of the record. If the law had required this work to have been done promptly, the chances are ten thousand to one that it would have been done correctly. A very large per cent. of the records that are brought to this *Page 486 
court and the Supreme Court of this state are in a fatally defective condition, as is evidenced by the large number of dismissals which have been entered in each court. We think that the length of time granted by the law in which appeals may be perfected is largely responsible for this.
Counsel for appellant take the position that because the state filed a brief in this case the fact that the transcript of the record was not verified was waived. This being a jurisdictional question, the defect could not be waived by the attorneys for the state. The state did not file a motion to dismiss this cause because the transcript of the record was not properly verified. This court deems it to be its duty to examine every record submitted to it, to see if it has been brought to this court in such a manner as to give the court jurisdiction thereof, and when a want of jurisdiction appears this court is without power to consider any questions attempted to be submitted, and upon its own motion will dismiss the appeal. The case-made having been stricken from the record, even if we could consider the transcript of the record there is only one assignment of error which we could pass upon, in the absence of the testimony in the case.
Upon the subject of reasonable doubt, the court instructed the jury as follows:
"By the term `reasonable doubt,' as used in these instructions, is meant that state of the case which, after a full consideration of all the evidence, leaves your minds in that condition that you cannot say that you feel an abiding conviction of the guilt of the defendant. You should not go beyond the evidence to hunt for doubt, or entertain doubt from mere caprice or conjecture. Such doubt should arise only from a candid and impartial and honest consideration of all the evidence, and the facts and circumstances presented upon the trial, and if, upon such consideration, doubt does so arise, and by reason of it you cannot say that you are satisfied to a moral certainty of the guilt of the defendant, you should return your verdict of not guilty."
The contention of counsel for appellant is that under this instruction the jury would not be authorized to find the defendant not guilty on account of the lack of evidence against him. We *Page 487 
have heretofore considered this question in the case of Moore v.State, 4 Okla. Cr. 212, 111 P. 822. In that case Judge Richardson said:
"Plaintiffs in error complain of that portion of the above instruction wherein the court said, `A doubt, to justify an acquittal, must be reasonable and arise from a candid and impartial consideration of all the evidence in the case.' The contention is that a doubt might arise from a lack of evidence, and that this portion of the instruction precludes that. We think the objection not well taken. A reasonable doubt might well arise from a candid and impartial consideration of all the evidence in the case, because the jury thought that all the evidence thus candidly and impartially considered was not sufficient to establish the defendant's guilt beyond a reasonable doubt; that it was wanting in quality or in quantity — in other words, that there was a lack of convincing evidence. And if, in fact, such a lack of evidence existed, that fact could be ascertained only by a candid and impartial consideration of all the evidence that had been given. It would perhaps be better, where the court sees proper to define reasonable doubt at all, to substitute for the expression objected to the statement that a reasonable doubt is an actual doubt, arising from the evidence or the want of evidence in the case; but we do not hold that the instruction as given was erroneous."
The consideration of all the evidence in the case necessarily includes the consideration of the question of a want of evidence. We must assume that the jury was composed of men of at least ordinary intelligence, and that they understood the English language. It is therefore apparent that, even if the transcript of the record had been verified as the law directs, we would have been forced to affirm this conviction upon such transcript.
The motion for a rehearing is denied.
ARMSTRONG and DOYLE, JUDGES, concur. *Page 488