## RIDENOUR v. STATE.

No. A-11355. May 9, 1951.

(231 P. 2d 395.)

Chester Norman, Andy Wilcoxen and Chal Wheeler, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Ed. A. Edmondson, Jr., County Atty., Muskogee County, Muskogee, for defendant in error.

POWELL, J. Jack J. Ridenour, plaintiff in error, was charged by information filed in the district court of Muskogee county with the crime of rape of a twelve year old girl, Sue Nell Wade, and was tried before a jury in Wagoner county, where the case was transferred on the granting of a change of venue to the accused. The jury found Ridenour, who will hereinafter be referred to as defendant, guilty as charged, and fixed his punishment at 25 years imprisonment in the State Penitentiary. Appeal has been perfected to this court.

The record in this case is quite voluminous, and the briefs alone total 287 pages. While the main brief of the defendant was filed April 8, 1950, the state's answer brief was not filed until February 20, 1951, after oral argument had been heard, and the defendant's reply brief was filed March 8, 1951. The petition in error contains 33 specifications of error, argued under eleven propositions.

After much deliberation this court has determined that the record in this case discloses fundamental error, and that the case must be sent back for a new trial, so that only the decisive questions raised or questions that might again arise on new trial will be treated.

The contention of counsel for defendant that the evidence is totally insufficient to justify the conviction cannot be sustained. But by reason of the necessity for a new trial, a detailed narration of the evidence and corroborative circumstances will not be undertaken. Suffice to say, while the young girl after the time that she claimed to have first had intercourse with the defendant, was apparently the aggressor and the person seeking the defendant in his apartment, rape by force is not claimed. Sue Nell had testified that when she was eleven years of age defendant had offered her up to $150 to permit him to have intercourse with her, but she stated that she was scared, but approximately a year later, she was evidently less timid. The evidence shows that this child was an underprivileged girl whose father was a totally disabled World War I veteran who lived in the Veteran's Hospital at Muskogee, that when Sue Nell was about one year of age her mother had died, and then she lived around with relatives, except that she developed · rheumatic fever and had for the five years preceding the alleged rape by the defendant lived in various hospitals in Oklahoma City and elsewhere as a ward of the Child Welfare Board. At the time of the alleged affair with defendant, she had returned to Muskogee to attend school and was living with her step-mother, though on occasion she would stay with her sister, Peggy, who had her own apartment. Sue Nell testified that defendant always gave her money, and had told her that he had been sterilized and that she had nothing to fear. The defendant admitted that during December, 1947, Sue Nell went along when he (a man 44 years of age) had a date with her married sister Peggy, who was but 16 years of age at that time, and that the date lasted until after 1:00 a.m. Defendant admitted taking whisky on the trip, and while he denied giving any to Sue Nell, or furnishing her cigarettes, both Sue Nell and Peggy testified that he gave Sue Nell two drinks at an inn where they spent some time, and also at his apartment where they went thereafter. All admitted that Peggy became intoxicated. Sue Nell testified that this was her first drink of whisky and the first time she had smoked. She testified to six separate acts of intercourse with defendant, commencing September 7, 1948, and ending October 5, 1948. Defendant sought to prove an alibi as to the October 5 charge, and denied ever at any time having had intercourse with the prosecuting witness. He did admit Sue Nell had tried to make him think in a conversation over the telephone that she had had affairs with four boys in one night, and that he need not be afraid of her. She testified that she was just telling him that, but that she said two boys.

It is claimed that the state failed to show penetration. The state argued that though a physician examined the prosecuting witness some three or four months had elapsed since the act charged, and hence such evidence was not produced. Such medical evidence would have been desirable evidence as to the fact of penetration regardless of lapse of time, or possibility of a claim of subsequent intercourse with others. Counsel for defendant argue that such an examination might have disclosed that the witness was still a virgin. No doubt if they had thought so they would have had her examined. Nevertheless, the state should have produced evidence of the witness' examination and its results. The state should seek the truth regardless of the disclosure. The girl, however, did testify that after the first act of intercourse she noticed blood on her panties when she got home. The state for some unknown reason failed to ask the witness if the defendant put his privates inside of her privates, but was satisfied with her answer that defendant had intercourse with her. Counsel for defendant .in cross-examining witness brought out that at one point in the preliminary examination Sue Nell had used the term "sexual intercourse" in describing her relations with defendant. Her testimony that defendant had her take off her panties and that he got in bed with her and had "an intercourse" unmistakably indicates that the intercourse was sexual intercourse.

The instructions of the court have been examined and the jury was properly instructed as to the issues in the case.

Under proposition Nine counsel for defendant contend that "the Court erred in overruling motion of plaintiff in error to quash the information on the grounds that the county attorney was without authority of law to transfer said cause to the city court of Muskogee County for preliminary hearing upon plaintiff in error's application for change of venue from County Court."

Counsel contend that the statute applicable is 39 O. S. 1941 § 501, and that it does not provide for the transfer by the county judge of a case to the city court, but to the "next justice court."

The constitutional provision, Art. II, § 17, simply provides that " * * * No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. * * *"

Of course, the city court of Muskogee is a special court authorized in counties having a city of more than 25,000 population. See 11 O. S. 1941 §§ 831-858. Section 832 provides that the judge may sit as an examining magistrate in all felony cases.

Under 39 O. S. 1941 § 501, supra, what the Legislature was attempting to do, of course, was to afford a defendant an opportunity to have his preliminary examination held before an unprejudiced magistrate. The complete wording of the statute so indicates. But by reason of the state of the record in this case, and the view we take by reason thereof, the construction of the above statute is not required.

From an examination of the transcript of the examining magistrate conducting the preliminary examination, as reflected in the record, we find that J. E. Beavers, judge of the city court of Muskogee, Oklahoma, certifies that on the 12th day of March, 1949, complaint was made before him "by Ed. A. Edmondson, Jr., charging that on the 5th day of October, 1948, in Muskogee county, Oklahoma, Jack Ridenour did commit the crime of rape, first degree, and complaint is on this day filed and warrant is issued and delivered to the sheriff." The minutes further show that on March 17, 1949, an application for change of venue was filed in the county court by the defendant, and that same was granted and the case transferred to the city court of Muskogee and on the same day defendant was arraigned in the city court, plead not guilty, and the preliminary hearing was set for March 26, 1949, and on that day passed to April 2, 1949, and that on said day preliminary hearing was had and the defendant was bound over to the district court of Muskogee county to answer the charge. The case-made further shows that on May 23, 1949, defendant filed in the district court notice of application for change of venue, and on June 1, 1949, filed a motion to quash the information in which was set out that there was no statutory authority for the county court to transfer the case for preliminary hearing from that court to the city court.

No complaint was or is made that the city judge was prejudiced or in any way disqualified to sit as an examining magistrate in the case, other than the technical claim of illegal transfer. And no complaint was interposed until after actual preliminary examination had been held and information filed in the district court. In fact, a change of venue to another county for trial on the charge had been applied for prior to the objection here urged being interposed. The record is not clear as to whether the judge of the city court acted on the complaint shown to have been filed with him on March 12, 1949, or on

the complaint supposedly transferred to his court by the county attorney from the county court on March 17, 1949.

It is, however, evident from the record that the defendant herein was accorded a preliminary examination before a committing magistrate on a complaint duly filed by the county attorney with such committing magistrate, who was not by the defendant claimed to be disqualified to act. A similar complaint had been filed in the county court covering the identical charge, and that court attempted to transfer the case so filed before him to the magistrate who actually held the preliminary examination. This appears to be of no consequence, in that the county attorney, independent of the action of the county judge acting as a committing magistrate, had the right and authority to file a complaint covering the charge with any other examining magistrate of his county whom he might choose. And for such reason it is not necessary to determine whether the county court of Muskogee county did or did not have authority to transfer the case for preliminary hearing to the city court. One examining magistrate is not bound by the action of another examining magistrate. In fact, one examining magistrate may dismiss a complaint on hearing or the county attorney may dismiss the complaint, but such action does not prevent the county attorney from refiling the complaint before another examining magistrate. This court has further held that until an accused is in jeopardy, a criminal action filed against him can be dismissed and refiled at the discretion of the county attorney, subject to the law governing limitations of time within which prosecution may be instituted. Cornell v. State, 91 Okla. Cr. 175, 217 P. 2d 528; Bayne v. State, 48 Okla. Cr. 195, 290 P. 354; Ex parte Oxley, 38 Nev. 379, 149 P. 992; 16 C.J.S., Constitutional Law, § 131, page 334; Hembree v. Howell, District Judge, 90 Okla. Cr. 971, 214 P. 2d 458.

From the state of the record, we must treat the complaint acted upon as duly filed in the city court by the county attorney and following which a preliminary examination was duly and regularly accorded, and unaffected by the action of the county judge acting as an examining magistrate.

The Attorney General complains bitterly throughout his brief of the case-made presented by counsel for the defendant. He states: "We are faced with a case-made with which counsel have tampered and have taken the liberty to insert and substitute pages." It seems that the trial judge was not present during about an hour and a half of the argument before the jury. The court reporter did not report the entire argument of the attorneys for the state, and did not reflect the court clerk's minutes. After the reporter delivered the case-made to counsel for defendant, they supplied the court clerk's minutes, and also incorporated certain recitals as to their understanding and remembrance of certain statements they allege counsel for the state made to the jury, and set out certain matters concerning the judge being absent from the court room. This covered pages 309 and 311a and 311b. At the time a copy of the case-made was served on the county attorney, counsel called his attention to the additions to the reporter's transcribed notes and thereafter the county attorney filed a motion to strike and also suggested some amendments. The county attorney made no contention that page 309 was a substitute for any other page. Counsel had prepared it, leaving page number blank and had demanded of the court reporter that he include it at the proper place when he reached that point. Pages 311a and 311b were added. Thereafter the case-made came on for settlement and the county attorney was present and the court after considerable argument decided to dictate his version of the matters complained about, and the judge's entire statement will be quoted hereinafter. For present purposes, however, the sole question is whether or not counsel followed the correct procedure.

The Attorney General, without citing authority or outlining any different procedure, states that "neither the [cited] statute [Tit. 12 O. S. 1941 § 965] nor any other statute or decision of the court or the Supreme Court furnish the slightest grounds for such insertion. There is a correct and proper way provided by which counsel may secure the correction or amendment of a case-made through proper order of court." Counsel seem to argue that the court reporter is the sponsor of the case-made, and that there were other substitutions and insertions. Nevertheless, the certificate of the trial court attests to the truthfulness of every material statement, and that the case-made "as corrected by me, now having been examined by me, is found to be full, true and correct."

With reference to the additions to the reporter's notes, the court at time of settlement of record, made the general statement (the balance of statement will be quoted hereinafter):

"In connection with the amendments suggested to the case-made before me, it seems to be agreed by all parties that the matters in controversy on pages 309, 311a and 311b were incorporated in the case-made from copy furnished by attorneys for the defendant and not from any part of the stenographer's notes on trial.

"In this connection this Court will say that he has no criticism of the furnishing of these copies by attorneys for the defendant for the reason that the attorneys have a right to serve any form of case-made they desire upon the County Attorney, and the County Attorney has the right to ask for amendments or corrections with respect to any part of the case-made so furnished and to which he has objections."

There are a number of statutory provisions covering this subject, and there are many decisions by this court and the Supreme Court. We shall quote the statutory provisions and a few of the decided cases.

Tit. 22 O. S. 1941 § 1059 reads in part:

"In all criminal cases appealable to the Criminal Court of Appeals, the appellant may prepare, and it shall be the duty of the court to provide for the preparation and settling of a case-made in all respects as in civil cases * * *."

Tit. 12 O. S. 1941 § 957 reads in part:

"A party desiring to have any judgment or order * * * reversed by the Supreme Court, may make a case * * *."

And section 958 of the same title reads in part:

"The case so made, or a copy thereof, shall, within fifteen days after the judgment or order is rendered, be served upon the opposite party or his attorney, who may within three days thereafter suggest amendments thereto in writing * * *."

And section 965 of this same title reads:

"In case the trial judge shall refuse to include any statement in a case-made which a party thereto, or his attorney, contends is correct, such party or his attorney, may file in said court an affidavit setting forth the matters in dispute and the fact that the trial judge has refused to include such facts in the case-made, and thereupon said judge shall be disqualified to determine the facts set forth in said affidavit, and a special judge shall be elected or appointed as in other cases of disqualification of the judge, who shall hear the evidence and make an order with reference to the facts in dispute, which order shall be included in the case-made, and shall constitute the facts recited in said order."

In the case of Friar v. McGilbray, 45 Okla. 597, 146 P. 581, the Supreme Court of Oklahoma held:

"A judge of the district court, in settling a case-made for the Supreme Court, has the power, on his own motion, or at the suggestion of either party, and before signing such case-made to make such alterations in the case-made, and such erasures and additions, as may be necessary to make the case-made speak the truth."

The time for an appellant to add anything omitted by the court reporter, or to submit a different version as to what happened, is prior to submission to the county attorney, calling the county attorney's attention to the additions or any changes, so that if he has any different version he may suggest amendments. He has three days to do so. After settlement of the case-made affidavits would, of course, not be considered. See Cochran v. State, 4 Okla. Cr. 379, 387, 111 P. 974.

In Lumpkin v. State, 5 Okla. Cr. 488, 115 P. 478, this court had occasion to consider the procedure in preparing and settling a case-made, and stressed the importance of the county attorney carefully reading over and considering every line in a case-made before it is presented to a trial judge for his approval and signature, and pointing out that the time to raise objections and correct errors is prior to the signing and settling by the trial judge.

In State ex rel. Schuman v. O'Bannon, District Judge, 181 Okla. 413, 74 P. 2d 606, the Supreme Court of Oklahoma said:

"A case-made differs from a transcript. A transcript must be full, true, and correct; but a case-made is presented by the plaintiff in error, who thereby becomes its sponsor. That is why the Legislature saw fit to provide by section 535, supra, the right of amendments and why our cases have permitted such liberal amendments."

See, also, Jones v. Duncan, 168 Okla. 598, 35 P. 2d 451, 452, where the court said:

"This question is settled by the prior decisions of this court. It is not necessary that a case-made contain an exact transcript of the reporter's notes of the evidence or oral proceedings of the trial, but the same may be shown in narrative form, and it is not necessary that the defendant agree to such preparation of the case-made."

See, also, State ex rel. Wigal v. Wilson, Judge, 43 Okla. 112, 141 P. 426; Howland v. Woodruff, 60 N. Y. 73, 76; Moran v. Rainbow Appliance Corp., 225 App. Div. 587, 233 N. Y. S. 522; City of Sapulpa v. Young, 147 Okla. 179, 296 P. 418; Rochelle v. Sharp, 183 Okla. 334, 82 P. 2d 813; St. Louis & S. F. R. Co. v. Taliaferro, 58 Okla. 585, 160 P. 610; Terrell v. State, 16 Okla. Cr. 287, 177 P. 125; Missouri K. & T. Ry. v. City of Ft. Scott, 15 Kan. 435; Lem Sing v. State, 4 Okla. Cr. 544, 113 P. 204; Cherry v. Brown, 79 Okla. 215, 192 P. 227, 13 A. L. R. 92.

In Dobbs v. State, 5 Okla. Cr. 475, 114 P. 358, 115 P. 370, this court held that the evidence might be narrated, and went into the matter of preparing case-made in some detail.

The appellants apparently followed the law in preparation of the case-made and the certificate of the court attesting to the correctness of the record, in absence of evidence of fraud, will be treated as conclusive.

Under proposition Two it is urged that "The court erred in leaving the court room and retiring to his chambers during the argument of counsel where he could not hear or control the proceedings during such arguments." This is the vital issue presented.

The record discloses that the arguments of the attorneys before the jury required around three hours and that the judge was absent from the courtroom

more than half of the time. He retired to his office, separated from the court-room by a wall, entrance to the office being gained by passing through a hall door and the office door. The doors remained open. The judge sat some 40 feet from the jury box. During the jury arguments there is evidence that the attorneys, being bitter at each other, made side remarks and several times sent for the judge to pass on certain objections raised as to nature of argument, etc. Then there was a dispute as to what had actually happened. The reporter's record was not satisfactory to the appellant, and as heretofore disclosed, counsel submitted pages 309, 311a and 311b as their statement as to what occurred during the argument of counsel. The county attorney denied the truthfulness of the insertions and the court thereafter on hearing and to settle the controversy made his own recital as to the facts. All this would have been unnecessary had the court remained in sight and hearing of counsel and jury at all stages of the trial. The question for determination is whether or not the court lost control of the trial. The findings of the court covering the facts is stated as follows (less the first two paragraphs heretofore quoted):

"With respect to the first amendment suggested by the County Attorney, the Court will say that he was called into the courtroom at least twice on account of the objections of the County Attorney to the arguments of Mr. Norman. Once was when it was stated by the County Attorney that Mr. Norman was arguing that the State was not entitled to a conviction for the reason that there had been no corroboration of the testimony of the prosecuting witness, Sue Nell Wade, and the Court corrected Mr. Norman on that question to advise the jury that the Criminal Court of Appeals had many times held that it was not necessary as matter of law for the testimony of the prosecuting witness to be corroborated, to which the defendant excepted. The other objection to Mr. Norman's argument the Court remembers was that upon being called into the courtroom it was stated that Mr. Norman was arguing that the State had not made a case for the reason that there was no proof by the State of force on the part of the defendant, Ridenour, upon and against the prosecuting witness, Sue Nell Wade, and in that connection the Court called the attention of the jury to the fact that the State's case was not based upon force but upon lack of age on the part of the witness, Sue Nell Wade. The Court was called into the courtroom several other times during the argument upon an objection by Mr. Wheeler and at his request, by either the bailiff or Mr. Fred Martin; how-ever, the Court is unable as matter of independent recollection to say what these objections were because they did not involve matters of sufficient importance to impress themselves upon the mind of the Court and whether they ought to have or not at least they did not impress themselves upon the mind of the Court as to what they were about, nor are they found in the record. The reasons and background of his being called into the courtroom will be stated more fully by the Court in connection with Number Two of suggestion of amend-ments by the County Attorney.

"With respect to Amendment Two suggested by the County Attorney the Court will say that for many years he has followed a policy of attempting to impress upon the jury from the beginning of the trial of any case, either civil or criminal, that the jury is the final authority to pass upon any case and to render the verdict which is the final judgment in the controversy. In thirty years experience upon the bench the Court thinks he has developed a system of conduct from the beginning of the empanelling of the jury at the opening of the term and throughout the trial of various matters submitted so that he impresses upon the jury the necessity of their close attention to all the testimony and the proceedings to the end that the jury may weigh the evidence and return a verdict which is in truth and in fact the verdict of the jury. As part of this system of conduct it has been my custom for many years when the instructions are read and lawyers are ready to begin their arguments, to suggest to the jury (and I did so in this case, although not taken by the reporter) that the consideration of the case and the verdict now rests between the defendant and the respective attorneys and the jury, and the

responsibility from here on out is the responsibility of the jury. Upon this suggestion to the jury, the Court habitually dismounts the bench and sits either over at the side of the courtroom or in chambers during the entire arguments of counsel. In this case the Court sat during part of the arguments on the south side of the courtroom (the jury being on the north side) but the larger part of the time the Court sat in his chambers with the door open so that he was in hearing of the lawyers, and while part of the jury were visible from the chambers, if the Court saw fit to look in that direction, the Court sat a large part of the time of the argument with his back to the jury and at a point from which he could not have seen the jury at all nor could the jury have seen him. With respect to the location of the Court's chambers, these chambers are separated from the courtroom only by a wall, but as a matter of entrance the hallway comes down to the north side of the chambers and in order to go from the courtroom into the chambers you pass through two doors and the chambers are south and west of the courtroom, but on the west side are separated only by a wall and when sitting in chambers the court was more than forty feet from the jury box.

"The Court does not as a matter of habit concern himself with the arguments until an objection is made, and in this case he was at least twice called into the courtroom, in each instance by Mr. Edmondson, County Attorney, upon an objection to the argument of Mr. Norman. The Court was not listening to the argument but was within hearing if he had seen fit to give the argument his attention. As part of this custom the Court never under any circumstances allows the door to be closed between himself and the lawyers and the jury, nor does he, nor did he, get beyond the hearing of the proceedings if he should see fit to listen. It has been the trial experience of the Court that this kind of conduct tends to impress upon the jury the fact that they are the final authority and not merely pawns to reflect the will of the judge.

"In addition to this matter of habit and custom the Court, at the end of the reading of the instructions and before he leaves the bench orally informs the jury that the case is now between the parties and the lawyers and the jury; the Court suggests that they give closest attention to the arguments on both sides for the reason that the lawyers might call their attention to the importance of many things which they might otherwise overlook—and the Court specifically remembers that he made this suggestion in this case. It has never been the custom for lawyers to object to this statement so long as I have been on the bench, nor did the lawyers object to this statement in this case at the time it was made.

"The Court will say that he absented himself a little more in this case from the immediate presence of the jury than is his custom ordinarily so to do. The reason for that was this (and without finding any fault with Mr. Wheeler, one of the attorneys for the defendant) Mr. Wheeler has always seemed to have a sort of complex that he is some way getting the worst of it in a trial. During the presentation of evidence the Court did not sit in the Judge's chair, but sat over by the side of the jury box during the entire taking of evidence. The reason for that was this: the case was tried in June and the weather was very oppressive; for the comfort of the jury it was necessary to set a large oscillating fan on the Judge's stand and between him and the jury. The left ear of the Court is entirely deaf and the hum of the fan and the fact the air was blowing away from me made it necessary for me to either shut off the fan, to the discomfort of the jury, or to sit by the side of the jury so that I might hear the evidence. Mr. Wheeler, not understanding the facts, made private criticism to the Court in that he was sitting by the jury and the Court later explained why he sat there instead of on the bench, but this criticism by Mr. Wheeler and the fact that there is always a theory (in which the Court takes little stock) that the jury might be paying some attention to the facial expressions of the Judge and his reactions to the arguments of counsel and this complex of Mr. Wheeler caused the Court to remove himself so far from the jury that no one could even think that the jury could get any reaction or expression from him and make any criticism or complaint on account thereof. Nobody, during the trial, made any

objection to this conduct of the Court, and if the parties had objected the Court would probably have sat closer to the jury, and this statement is made not because the Court considers it of any importance in this case, since no action was taken, but merely an order to clarify the record and give to the Criminal Court of Appeals a picture so far as they may be able to get from written record of what actually took place at the trial. I will add that the arguments during the trial of this cause were quite extensive, beginning about 9 o'clock a. m., on the third day of the trial or June 29, 1949, and continuing until 12 o'clock noon of the same day.

"With respect to Amendment Three and which is shown on Page 312 of the case-made the Court will only add the further statements that when the verdicts were submitted by the Court to the jury, he omitted to give the jury the verdict where the punishment is left to be fixed by the Court. The County Attorney asked the Court to add such a verdict to those submitted and the Court made the statement shown and the record in that connection does speak the truth as to what the Court said, with the addition suggested by the Court as to how and why the statement came to be made.

"In connection with the suggestion of amendments by the County Attorney and the matters referred to at Pages 309, 311a and 311b of the case-made, the foregoing statement is inserted by the Court as a complete substitute of all such matters and things referred to and as a recital of the facts in connection with the matters referred to in such suggestion of amendments and the parts of the case-made objected to, except as to the Third Amendment suggested and which has been heretofore covered in this recital."

In the case of Starr v. United States, 4 Ind. Ter. 550, 76 S.W. 105, 106, where the facts recited are very similar to the facts in this case with reference to the absence of the judge from the court room, the Court of Appeals of Indian Territory held:

"In a prosecution for homicide it was error for the trial judge to leave the courtroom and go to his chambers, not within hearing of the proceedings, during the argument of the prosecuting attorney, though he was accessible and within call."

In the case of Slaughter v. United States, 5 Ind. Ter. 234, 235, 82 S.W. 732, the authorities are reviewed in some detail, and the Court then held:

"On the trial of a capital case it is the duty of the presiding judge to be present in the courtroom as well during the argument of counsel as during the introduction of the evidence, and, should it become necessary for him to retire for a few moments, he should suspend the proceedings until his return."

The first time that the question under consideration was before this court was in the case of Cochran v. State, 4 Okla. Cr. 379, 111 P. 974, 978. Therein the trial judge had stepped out of the room for about ten minutes while the trial was in progress, and the door was closed, a more extreme case than the present one, but nevertheless a case where the court had something to say about the principle here involved. Presiding Judge Furman, speaking for this court, said:

"There is an absolute unanimity among all the appellate courts that in the trial of criminal cases the judge should be present and see and hear all that occurs in open court during the trial. The only difference among the courts with reference to this question is that some states hold that the consent of the defendant cures the error, and others hold that such absence may be harmless error, according to the particular circumstances under which it takes place. We are not, however, disposed to apply the doctrine of consent or of harmless error to this question. The judge should have the court under his control during every moment of time in which it is open and transacting business." (Emphasis supplied.)

The next time the question arose was in the case of Wright v. State, 7 Okla. Cr. 280, 123 P. 434, 435. Judge Armstrong for the court, stated:

"During the progress of the trial, the record affirmatively discloses the fact that the presiding judge vacated the bench and walked to the rear of the courtroom, so far away that he could not hear and observe the proceedings taking place. During this absence, it is alleged that when the special counsel for the prosecution was making an argument to the jury one of the jurors arose from his seat, extended his hand, and expressed approval of counsel's position. On account of the fact that the court did not hear what took place, he permitted counsel for the accused to show the transaction by proof; the facts upon the point raised being undisputed."

This court then cites a long list of cases on the subject, several being quoted from, after which the conclusion was reached that:

"It is just as serious an error for the court to retire to a remote place in the courtroom, out of hearing and control of the proceedings in progress, as it would be to absent himself from the court room entirely. It is his duty to preside over and control the trial. If he loses this control by being out of the hearing and presence of the jury, it is just as prejudicial to the rights of the party on trial as it would be for him to leave town. It is the supervision and control of the trial in person by the trial judge that the law requires. It clearly appears from the record in this case that the court lost that control, and did not know what the proceedings and the conduct of the jurors and attorneys were, and for that reason permitted testimony to be taken, in order to show just what did occur. The conduct of the juror complained of was itself prejudicial, and should not have been permitted, and in all probability would not have been permitted, had the trial judge been on the bench and present, observing the proceeding."

In Stites v. State, 9 Okla. Cr. 596, 132 P. 822, the trial judge was absent from the court room for a time during the argument of counsel to the jury, and the court after referring to the cases heretofore cited herein with approval, held:

"When a criminal case is on trial in any court in this state, it is necessary for the trial judge to be present during each and every stage of the proceedings."

See, also, the following cases with varying factual situations but where the principle under consideration is treated: Allen v. State, 13 Okla. Cr. 533, 165 P. 745, L.R.A. 1917E, 1085; Horne v. Rogers, 110 Ga. 362, 35 S. E. 715, 49 L. R. A. 176; Moore v. State, 46 Ohio App. 433, 188 N. E. 881; People v. Silver, 1934, 240 App. Div. 259, 269 N. Y. S. 765; Freeman v. United States, 2 Cir., 227 F. 732; Hyatt on Trials, Vol. 2, Sec. 983; 3 Am. Jur. 607; Ellerbe v. State, 75 Miss. 522, 22 So. 950, 41 L. R. A. 569.

We think the language of the court in People v. Silver, supra, appropriate to the facts in the within case. Said the court:

"But, at least in the trial of a felony case, it is our opinion that the presiding judge may at no time relinquish control of the proceedings without producing a dissolution of the court. No one would assert that the trial court could proceed in the absence, no matter how brief, of a juror in the case. In our opinion the absence of the judge is as important and as fatal to the judgment. If he may absent himself at all from the courtroom during the trial, how far may he go and how long may he remain away." [240 App. Div. 259, 269 N. Y. S. 775.]

The Attorney General calls our attention to a number of civil cases from the Supreme Court of Oklahoma and from other states, along with a number of criminal cases from other jurisdictions, that support his argument for a relaxation of rule early established by this court. Our attention is particularly called to the last case before this court wherein the question at issue was involved, and being Blagg v. State, 36 Okla. Cr. 337, 254 P. 506, 509. Therein the trial court stated:

"The door of my chambers was open. It might be possible that I took a book off my desk, which is some three or four feet from the door. If I did step in that room during the progress of the argument in this case, it would not exceed ten or fifteen seconds of time, and I would not have been more than ten or fifteen feet away from counsel arguing the case and not to exceed three feet from the jury."

This court determined from the facts brought out that the court did not lose control of the trial, and so far as that case is concerned did make that question the test.

Here the court was absent for one and a half hours or more; the attorneys seem to have been engaged in a verbal "free for all." The judge had to be sent for and before he could rule, he had to be told what had been going on. The attorneys could not agree. The court had not even attempted to hear what was being said, which surely would have been a task even if he had so attempted, in view of his being deaf in one ear and in a separate room, sitting more than 40 feet from the jury box. Clearly the court was in no position to check the abuses of the privilege of argument and to interpose and restrain counsel, where necessary, in argument and illustrations which might have been unwarranted by the evidence and instructions of the court, and which might if unrestrained be likely to mislead the jury. It is our conclusion that something more is required of the presiding judge than that he should be within hearing. We think, as said in Horne v. Rogers, supra, that "the judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizens should be constituted during the entire trial in the manner prescribed by law. The great weight of authority is in harmony with this view." [110 Ga. 362, 35 S. E. 718.]

By reason of our conclusion that the court lost that supervision and control of the court required in a criminal trial, the case is reversed and remanded for a new trial.

BRETT, P. J., and JONES, J., concur.