**In the Matter of the Habeas Corpus of
Charles Edwin YORK.**

No. A–12181.

Criminal Court of Appeals of Oklahoma.

April 27, 1955.

Carroll Samara, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., for respondent.

JONES, Presiding Judge.

This is an original action in habeas corpus brought by the petitioner, Charles Edwin York, to secure his release from confinement in the state penitentiary where he is serving a sentence of 45 years after conviction in the District Court of Oklahoma County on a charge of robbery with firearms. The appeal from such conviction has been affirmed by this court. York v. State, No. A–12,086, Okl.Cr., 281 P.2d 769.

Defendant's petition is based upon the proposition that at his trial he did not have the effective assistance of counsel and did not waive his constitutional right to such assistance of counsel.

The facts are that on or about August 25, 1953, two men concealed themselves in the home of Mr. and Mrs. Gurley B. Lenn in Oklahoma City, while the Lenns were absent; and when they returned to their residence they were bound, abused and robbed of $5,000 in cash and approximately $2,800 in personal property. The robbers, evidently acting under the belief that a large amount of money was hidden about the premises, tortured Mr. Lenn with an electric curling iron in an effort to force him to disclose the whereabouts of the money. The robbers were armed with a pistol.

Subsequently one Adrian Wayne Burns was arrested and charged with such offense in a complaint filed before an examining magistrate. At that time Burns had pending against him a charge in Washita County of operating and conducting a gambling house and his attorneys on that charge were Raymond Plumlee of Cordell and Wendell Stockton of Oklahoma City. After his arrest on the robbery charge those two attorneys were contacted by Mr. Burns and Attorney Stockton suggested that David Tant, an attorney of Oklahoma City, be employed to assist them in the defense of the case. Mr. Tant and Frank Massad, another attorney of Oklahoma City, were contacted and Burns and members of his family employed Plumlee, Tant and Massad to represent Burns on the robbery charge and agreed to pay them $7,500 as their fee for such representation. A substantial part of the fee was paid immediately.

About three or four weeks later Charles Edwin York, the petitioner herein, was arrested in Tulare, California, and jointly charged with Burns in the robbery of the Lenns. Upon the return of York to Oklahoma City to answer the charge filed against him, he and his mother consulted Mr. Tant concerning his representation of York and informed Tant that they were without funds with which to pay him, but that if he would agree to represent York they would try to obtain some funds and pay him something for his work. A joint conference was then held, with York,

Burns and the three attorneys for Burns attending, and it was there agreed that since there was nothing hostile and conflicting in the interests of Burns and York that the attorneys already employed by Burns would assume the obligation of also defending York. This arrangement was entirely satisfactory to all parties concerned and thereafter the three attorneys appeared as counsel for both Burns and York. Thereafter on December 7, 1953, York and Burns were jointly charged by an indictment filed by a grand jury of Oklahoma County with the crime of robbery with firearms as aforesaid. Upon the arraignment of the two accused men in the District Court of Oklahoma County, a joint motion to quash the indictment was filed by their attorneys. Five witnesses were sworn, evidence was introduced and the motion to quash was overruled. Each accused then entered his plea of not guilty. The cause was assigned for trial, counsel for the defendants asked for a severance and the county attorney elected to first try York. The trial of York commenced on March 15, 1954, and lasted six days. He was ably represented throughout the trial by the three attorneys above mentioned who introduced evidence from many witnesses tending to establish an alibi for York. The jury after considering the case for several hours returned a verdict of guilty and pursuant to their verdict York was sentenced to serve 45 years in the penitentiary.

Thereafter counsel for York filed application in the District Court of Oklahoma County for a casemade at the expense of Oklahoma County. Upon the denial of such motion, counsel for the accused filed a motion in the Criminal Court of Appeals seeking an order from this court directing that a casemade be prepared at the expense of Oklahoma County. Upon a showing being made that counsel had been paid several thousand dollars to represent the accused and his co-defendant, Burns, the motion was denied. Thereafter Attorney Tant had the court reporter prepare at Tant's expense a transcript of the record to which was attached a petition in error which was then docketed in this court as case No. A–12,086 as an appeal from the conviction

sustained by York. Allegedly being unable to secure funds to pay for a casemade, Attorney Tant at the suggestion of this court prepared a statement of the evidence in narrative form. The county attorney refused to agree to the accuracy of said statement so prepared but did agree to all of it except the statement with reference to the cross-examination of York. Thereupon Attorney Tant ordered the district court reporter to prepare a transcript of York's testimony for which Tant agreed to pay from his own funds.

In the meantime shortly after York had been convicted, his co-defendant Burns decided to make a full disclosure of the facts surrounding the alleged robbery of the Lenns. He accordingly discharged his attorneys and entered into some sort of an agreement with the county attorney concerning his case, the exact nature of which has not been disclosed to this court, wherein Burns agreed to make a full disclosure of the details of the alleged crime and to testify concerning the part played by a third alleged conspirator, to-wit, one Robert O. Hurt. Thereafter the said Hurt was charged with the robbery of the Lenns and he employed Attorneys David Tant and William O. Mounger to represent him. His case was set for trial in November, 1954.

York had been transported to the state penitentiary to commence the serving of his sentence. During his incarceration at the prison representatives of the county attorney's office contacted him on different occasions and York finally agreed to testify as a witness against Hurt and he did appear and testify as a witness against Hurt at Hurt's trial in November, 1954, at which a mistrial was had because of a hung jury. In his testimony in that trial, York confessed his complicity in the robbery of the Gurley B. Lenns and testified that the plan to rob them was made by Hurt. After this testimony by York, Attorney Tant appeared before this court and informed the court that he had made arrangements for preparation of the record to complete the appeal of York but that in view of York's testimony that he was guilty of the crime, he felt that it would be a useless expense and ges-

ture to attempt to convince the Criminal Court of Appeals that York was innocent. He did ask for and was granted additional time to inform York as to his opinion concerning the appeal so that if York desired anything further done, he would have an opportunity to do it. Thereafter Attorney Tant informed this court that petitioner York was evidently relying upon the office of the county attorney of Oklahoma County to assist him in avoiding the payment of the full penalty imposed upon him in the judgment and sentence pronounced after his conviction in the District Court of Oklahoma County and that he, Attorney Tant, did not desire to brief the case in the absence of a request from York that he do so, and the appeal so far as he was concerned could be submitted for determination on the record which Tant had filed. In the interim present counsel for York filed the petition in habeas corpus and made no effort to present the question here involved in the appealed case although the appeal was still pending at that time. A week after the habeas corpus action was instituted the opinion of this court was filed affirming the judgment and sentence of the District Court of Oklahoma County.

It is the contention of the petitioner that he was merely a pawn in the conspiracy to rob. That the master conspirator was Hurt. That unknown to him Hurt had contacted Massad and Tant to represent him at the time they were purportedly representing the petitioner York. That their interests were hostile and conflicting and that because of such York was denied the effective assistance of counsel during the trial.

■ Petitioner relies principally upon the case of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, annotated in 148 A.L.R. 183. That case involved a prosecution in the federal court for conspiracy to defraud the United States. The conviction as to Glasser was reversed but affirmed as to the other conspirators, the Supreme Court holding that the trial court erred in appointing Glasser's attorney to represent a co-defendant whose interests were hostile to that of Glasser.

In the headnotes to the case the law is set forth as follows:

"Error on the part of the court in designating counsel for a defendant in a criminal case to represent a co-defendant also, after defendant had expressed an objection to the proposed designation, will be deemed prejudicial where the case against such defendant is not a strong one, and the failure of his counsel to undertake the cross-examination of one of the witnesses for the prosecution and to object to certain testimony as being inadmissible against him was influenced by a desire to protect his other client."

That case and the other cases cited involved similar questions presented on appeal from convictions, it being held that under the Sixth Amendment to the federal constitution, which is comparable to Article 2, § 20, of the Oklahoma Constitution, the right to assistance by counsel means effective assistance by an attorney who gives the accused his complete loyalty and whose service is of such character as to preserve the essential integrity of the proceedings. Butzman v. United States (Craig v. United States), 6 Cir., 205 F.2d 343; District of Columbia v. Scott, D.C.Cir., 214 F.2d 860.

■ It should be borne in mind that this is a habeas corpus action and it is well settled that in a collateral attack upon a judgment of conviction, regular on its face, by habeas corpus, the judgment will not be vacated unless it is void as having been rendered without jurisdiction. Ex parte Brown, 90 Okl.Cr. 129, 211 P.2d 293; Ex parte Potts, 89 Okl.Cr. 89, 205 P.2d 522; Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367; Ex parte Wallace, 81 Okl.Cr. 176, 162 P.2d 205.

It has also been held:

"The court will not issue writ of habeas corpus where accused has appealed his judgment of conviction, the judgment is affirmed and questions raised in habeas corpus proceedings were in existence and known to petitioner at time of appeal and were matters which properly should have been

presented by appeal." Ex parte Herren, 74 Okl.Cr. 154, 124 P.2d 276.

However, it is established law in Oklahoma that habeas corpus is available to one who has been convicted and sentenced without having effectively waived his constitutional right to assistance of counsel, and to whom expiration of time has rendered an appeal unavailable. In re Stevens, 81 Okl.Cr. 65, 160 P.2d 415; Ex parte Cornell, 87 Okl.Cr. 2, 193 P.2d 904, and cases therein cited.

■ However, the guarantee under the Oklahoma Constitution of the right of an accused to be represented by counsel is a personal right for the benefit of the accused which may be waived by him, and even should we concur in the rules of law set forth in the appealed cases cited on behalf of petitioner, we would also be forced to conclude that if the accused in a criminal case may waive the right to have any counsel at all appear for him, he surely could waive any right he might have to have the exclusive assistance of counsel.

■ The record discloses that after the arrest of York that York, the co-defendant Burns and the three attorneys for Burns all met and discussed the case. It was agreed that the attorneys for Burns would represent York and York acquiesced with full knowledge that the fee for their services was paid by Burns. At no time during the trial or on the appeal was the issue now raised presented for determination. Furthermore, we are firmly convinced that the attorneys who appeared for York at his trial did all that was humanly possible to secure his acquittal. That they were unable to do so was not because of lack of representation, but because of the strength of the State's case. Counsel has wholly failed to show where the interests of Burns and York were hostile or show where counsel omitted anything in York's defense because of their representation of Burns. On the contrary the evidence at this hearing shows diligent and faithful representation of York.

Present counsel insists that York was sacrificed to save Burns and Hurt. The testimony of Attorney Tant in this connection absolutely refutes this contention. He testified that at the time he was employed by Burns and later by York that neither of them made any mention that Hurt was connected with the alleged crime and that his later employment to represent Hurt was made with the knowledge of both Burns and York and no mention was ever made by any of them that their interests might conflict so that the representation of them by the same attorneys would be improper.

Present counsel for petitioner contends that his attorneys decided to throw him to the wolves to save Burns and Hurt. We feel this contention is absurd in the face of the record. At the time counsel for York and Burns asked for severance they had no way of knowing whether York or Burns would be first tried. That was a matter solely for the State to determine. The State under the law had the option to elect which of the defendants they would first try and they chose York. Until York was convicted and sentenced to serve 45 years in the penitentiary, his accomplice, Burns, had steadfastly maintained his innocence. The stiff sentence received by York upset Burns to the extent, as shown by the evidence before us, that Burns contacted the county attorney and sought to make an agreement with him whereby he would divulge fully the facts of the purported robbery and testify for the State.

We can foresee that if we should vacate the judgment and sentence pronounced against petitioner York on the flimsy argument here presented, that no end of difficulty would be presented in the future in cases involving two or more individuals accused of crimes. In any of them if the various defendants were represented by the same counsel and were separately tried and convicted there would be just as much to support a reversal of the conviction of any of them as in the instant case.

■ Nothing herein should be construed as reflecting upon the conduct of the county attorney or his assistants. It is his duty to ferret out and prosecute those who violate the laws of the State. Where two or more are involved, because of inability to secure evidence it often becomes neces-

sary to make agreements with one of the accused to testify in order to secure convictions. This practice is not frowned upon but is generally upheld by the courts. In this case if the county attorney feels that York has been of material assistance to him and he wishes to help him, the only recourse left is for an application to the Governor through the Pardon and Parole Board for a commutation of sentence. Even on appeal this court is not authorized to commute sentences as an act of grace. It is true that we may modify the sentence imposed upon one convicted of crime when the record before us shows that justice requires it. Because of the horrible and brutal nature of the crime which was admittedly committed by York, this court on appeal did not believe that the ends of justice required a modification of the sentence. The matter of grace in the form of a commutation of sentence is an entirely different matter to be directed to the Pardon and Parole Board of this state.

The writ of habeas corpus is denied.

BRETT and POWELL, JJ., concur.

POWELL, Judge (concurring).

I agree that the writ of habeas corpus applied for should not issue.

I can appreciate the position in which original counsel, Tant, was placed when, while he was in process of perfecting his client's appeal, petitioner York decided to confess his guilt to the charge for which he had been convicted and implicate one Robert O. Hurt, who was also being represented by petitioner's counsel, though the last representation, from the record before us, was undertaken subsequent to the representation of York.

It is suggested that under the circumstances the appeal in case No. A–12,086, York v. State, Okl.Cr., 281 P.2d 769, by casemade would have been futile. Perhaps so, from facts now before us, but this might not always be the case. We note from the body of the opinion in the above case it is said: "An examination of the petition in error discloses that the questions assigned as error can only be determined by the examination of a case made concerning a certified record of the evidence introduced at the trial. Since the record of the evidence introduced at the trial is not before us, we cannot determine any of the assignments of error. There is nothing in the transcript of the record to show that the judgment and sentence should not have been rendered."

The defendant York made a showing in this court that he was a pauper, and ordinarily we would have ordered a casemade at the expense of Oklahoma County, where he had been tried, but the evidence showed that co-defendant Burns and his family had paid Mr. Tant and associates several thousand dollars to defend not only Burns, but York. Under such circumstances we did not feel like requiring the taxpayers to pay for the record.

It turned out that Burns and York testified at the trial of Hurt, and for the State, implicating Robert O. Hurt. A sharp conflict in interest between York and Burns on one side, and Hurt on the other, developed. And while under the circumstances then appearing counsel may have been convinced that all further efforts in behalf of York would prove futile, still it occurs to me that it was his duty, in addition to the petition in error and transcript already filed, to have narrated such of the evidence heard by the court that he felt supported his claim of error, and presented the same in proper time to the trial court for settlement, the same as if the court reporter had typed out such testimony. The county attorney would then have been forced to submit his version and the trial court would have been compelled to have determined the facts. Such narration filed would have preserved the record, and counsel could never have been accused of neglecting his client, as is vigorously charged in petition and brief now before the court. See, for procedure, Ridenour v. State, 94 Okl.Cr. 92, 231 P.2d 395, 401, 402.

Having made possible an appeal by casemade, counsel could then have made application to this court to withdraw from the case.

While from the matters set out in the opinion herein, I must agree that in this

particular case the appeal even by case-made would have been futile, still I feel that as a matter of principle defendant should have been enabled to have had this court so determine, rather than in effect having such determination made by counsel at a time he was in a position by force of events, even though he could not control such events, of representing clients with conflicting interests.